**PEOPLE OF THE TERRITORY OF GUAM, Plaintiff–Appellee,**

v.

**Bobby G. MARQUEZ, Defendant–Appellant.**

**No. 91–10008.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 1991.
Decided May 12, 1992.

Before: ALARCON, NELSON, and CANBY, Circuit Judges.

ALARCON, Circuit Judge:

Bobby Marquez was convicted by a jury in the Superior Court of Guam of the crimes of aggravated assault and possession and use of a deadly weapon in the commission of a felony, in violation of the law of the Territory of Guam. He appealed from his conviction to the Appellate Division of the District Court of Guam. The Appellate Division affirmed. He now appeals from the adverse decision of the Appellate Division of the District Court of Guam. He seeks reversal of the judgment of conviction on the ground that the trial judge refused, over objection, to give the jury oral instructions on the elements of the crimes charged against him and the definitions of the terms used in a description of the charge.

We reverse because we conclude that the failure of a trial court to instruct the jury orally makes it impossible for an appellate court to determine from the record whether each juror was aware of the elements of each crime before the verdict was rendered.

## PERTINENT FACTS

After counsel completed their closing arguments, the court proceeded to read certain of the instructions to the jury. After orally defining reasonable doubt, the court passed out written instructions setting forth the elements of the crimes of aggravated assault and possession and use of a deadly weapon in "outline form." The court also provided the jury with written definitions of each element in "essay form." In addition, the court handed the jury a copy of the indictment at the time it distributed the written instructions.

The jury was advised as follows concerning the written instructions:

Howard Trapp, Agana, Guam, for defendant-appellant.

Mark E. Kondas, Asst. Atty. Gen., Agana, Guam, for plaintiff-appellee.

We are going to give you a few sheets of paper to take up. One of these is the definition according to our law, of certain terms that are mentioned in the description of the offense or the elements of the offense. You will have this with you, so there is no need of reading it to you.

The court then explained that the written instructions contained a definition of "knowingly," "recklessly," "bodily injury," "deadly weapon," and "serious bodily injury." The court then reiterated that: "I will not read this to you. You will have it with you."

Defense counsel requested a side bar conference. Outside the hearing of the jury, defense counsel asked the court if it intended to read the instructions containing the elements of the crimes and the definitions of these terms used in the indictment. The court replied, "I'm not going to read it." Thereafter, the court completed its oral charge to the jury without reading the instructions that set forth the elements of the crimes and their definitions.

## DISCUSSION

### A. *Was the Error Presented to the Trial Court?*

■ Marquez contends that the district court erred in failing to read the elements of the alleged crimes to the jury. The Government argues that defense counsel did not object to the failure of the trial court to read the elements of the offenses to the jury. The record does not support the Government's contention.

During the side bar conference, conducted after defense counsel became aware that the court did not intend to read a definition of the offenses charged in the indictment, the following colloquy ensued:

MR. TERLAJE: I just want to say, Judge, that those statutory definitions should be read into the record rather than just passed to them.

THE COURT: That goes . . .

MR. TERLAJE: . . . Because then they . . .

THE COURT: That is part of the record; it'll go to—We agreed that would

be included, all of that. That's why we said that we are giving them the statutory definitions. It is always part of the record, whatever any party examines, that's part. In fact, even the balloting is. Everything.

MR. TERLAJE: So then if that's the case, then we don't have to read instructions, just give it to them.

THE COURT: We will—

MR. TERLAJE: Has that been your practice, Judge, because I want to preserve the record . . .

THE COURT: David, I've been doing that for the last nine years. Nobody has ever said nothing about reading it.

MR. TERLAJE: Well . . .

THE COURT: Because they take it with them, which is better than reading it; and then it's part of the record.

MR. TERLAJE: But your first instruction was "You will never get part of these instructions. You're going to have to rely on your own memory as to what these instructions are."

THE COURT: But this is an exception to that. I said also that "You'll get certain papers with important, essential things." No; I am going to give that. I'm not going to read that.

MR. TERLAJE: All right.

THE COURT: They'll take it there, and it's part of the record. You can put your—

MR. TERLAJE: It's already.

THE COURT: Yes, it is already put on the record.

MR. TERLAJE: Okay, Thank you, Judge.

A reasonable construction of this dialogue is that defense counsel reminded the trial court of its duty to read the definition of the crimes to the jury. Defense counsel informed the court that he wished to "preserve the record." The only reason to "preserve the record" is to be in a position to claim error on appeal in the event of an adverse verdict from the jury.

■ The Government appears to argue, however, that because defense counsel concluded his presentation at the side bar con-

ference with the words, "Okay. Thank you, Judge," he acquiesced in the court's ruling that it was not necessary to read the elements of the crimes to the jury. We do not interpret defense counsel's commendable civility, in the face of an extraordinary ruling, as an abandonment of the objection or a waiver of his client's right to appeal. In light of the trial judge's surprising statement that he had followed the same practice of submitting written instructions on the elements of a crime for nine years without any protest, further objection by defense counsel would have been futile. "A party need not properly object if doing so would be a 'pointless formality.'" *United States v. Kessi*, 868 F.2d 1097, 1102 (9th Cir.1989) (quoting *Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Systems, Inc.*, 732 F.2d 1403, 1410 (9th Cir. 1984)).

B. *Is It Error to Fail to Give Oral Instructions on the Elements of a Crime?*

Marquez contends that we must reverse because the trial court failed to instruct the jury on the elements of the offense before submitting this matter to the jury. The Government argues that the trial court "read the elements of the offense to the jury in his opening instructions" on June 20, 1989. Appellee's Brief at 12. We have read the excerpt of the record for June 20, 1989. The transcript of those proceedings shows that the trial court only read the charges in the indictment to the jury during the voir dire examination.

Forty-six years ago, in *Morris v. United States*, 156 F.2d 525 (9th Cir.1946), this court commented as follows regarding a similar argument:

> In the course of our research we have read decisions upon the point as to whether mere reference by the judge in his instructions to the information or indictment, which is handed the jury to take to the jury room, is sufficient information as to the offense charged. And the great weight of authority is that such practice is not sufficient. The court must directly and not by reference to a

document in the jury's possession define the offense charged in clear and precise language.

*Id.* at 531 n. 4.

Our decision in *Morris* did not expressly require that instructions defining the offense charged be read aloud. In *United States v. Noble*, 155 F.2d 315 (3d Cir.1946), however, the Third Circuit ruled emphatically that all instructions to the jury must be oral. In *Noble*, the court stated:

> It is therefore essential that all instructions to the jury be given by the trial judge orally in the presence of counsel and the defendant. We conclude that the failure in the present case to instruct the jury upon the elements of the crime was error.

*Id.* at 318.

The Third Circuit explained its holding in the following words:

> [E]ven if the information had contained a full recital of all the applicable legal principles the trial judge would not have fulfilled his duty in this regard merely by sending the information out with the jury to read if they chose to do so, during their deliberations. For not only are counsel and the defendant entitled to hear the instructions in order that they may, if they are incorrect, object to them and secure their prompt correction by the trial judge, but it is equally important to make as certain as may be that each member of the jury has actually received the instructions.

*Id. See* 2 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 483, at 693–94 (2d ed. 1982) (jury instructions "must be given orally by the judge").

Our research, and that of the parties, has not disclosed any case other than *Noble* that discusses the duty of a trial judge to instruct orally. We suspect that the issue has not been raised in any other published decision because trial judges and litigators have always assumed that jury instructions must be oral. Because the issue is squarely presented in this case, we hold, for the reasons articulated by the Third Circuit in *Noble*, that all jury instructions must be

read aloud to the jury in the presence of counsel and the defendant.

### C. *Was The Error In Failing To Read The Elements Of The Crime To The Jury Prejudicial?*

■ The Government argues that the trial court's error, if any, was not prejudicial because counsel argued the elements of the crime to the jury, and the definitions were provided to the jury in written form.

The court instructed the jury before closing argument that "as to the law, you are to completely disregard any statements by [counsel] as to what is the law." The Government has failed to demonstrate that the jury ignored the court's instruction that they "completely disregard" counsels' explanation of the law.

■ The Government also asserts that the failure of the trial court to instruct on the elements of the offense should not compel an automatic reversal. The Government's reliance on *Olar v. United States*, 391 F.2d 773 (9th Cir.1968), for this proposition is misplaced. In *Olar*, the district court inadvertently omitted an instruction on a necessary element of the offense. *Id.* at 775. The trial court, however, instructed the jury on all the remaining elements. *Id.* at 774–75. We noted in *Olar* that there was no factual dispute concerning the element of the offense omitted in the court's instructions. *Id.* at 774. In contrast, the trial court in the instant matter did not orally instruct the jury on *any* elements of the alleged offenses.

Furthermore, in *Olar* the appellant failed to object to the omission. *Id.* at 775. The appellant, therefore, had the burden of persuading this court that the error was outcome determinative and "highly prejudicial." *United States v. Sanchez*, 914 F.2d 1355, 1358 (9th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991). Under the law of this circuit, if an objection is not made to the failure to give a required instruction, we will reverse "only in exceptional circumstances, when the error is highly prejudicial, affects substantial rights, and it is highly probable that it materially affected

the verdict." *Sanchez*, 914 F.2d at 1358. Because of the "rather special circumstances" presented in the record in *Olar*, we declined to find plain error there. *Olar*, 391 F.2d at 775. In the instant case, Marquez objected to the refusal of the trial court to read the instruction on the elements of the offenses to the jury. He, unlike the appellant in *Olar*, does not bear the burden of persuading us that we should apply the plain error rule.

As a matter of due process, an appellant is entitled to a " 'record of sufficient completeness' " so that he or she can demonstrate that prejudicial error occurred during the trial. *Mayer v. City of Chicago*, 404 U.S. 189, 194, 92 S.Ct. 410, 414, 30 L.Ed.2d 372 (1971) (quoting *Coppedge v. United States*, 369 U.S. 438, 446, 82 S.Ct. 917, 921, 8 L.Ed.2d 21 (1962)).

It is impossible for Marquez to demonstrate from the record whether any juror failed to read the instructions concerning the elements of the crimes charged in the indictment. Marquez was precluded by the rules protecting a jury's decisional process from interviewing the jurors to show that one or more of them failed to read the written instructions. *See, e.g.,* Fed.R.Evid. 606(b). Under the law of this circuit, "it is improper and unethical for lawyers to interview jurors to discover what was the course of deliberation of a trial jury." *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir.), *cert. denied*, 409 U.S. 880, 93 S.Ct. 208, 34 L.Ed.2d 135 (1972).

The Supreme Court has instructed that constitutional error that occurs during the presentation of the case to a jury is subject to a harmless error analysis. *Arizona v. Fulminante*, — U.S. —, — – —, 111 S.Ct. 1246, 1263–64, 113 L.Ed.2d 302 (1991). Automatic reversal is compelled, however, if the record reveals "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless error' standards." *Id.* 111 S.Ct. at 1265.

The erroneous refusal of a trial court to admonish the jury orally on the elements of the alleged offense prevents an appellate court from conducting a harmless error

analysis because the record is silent regarding whether any of the jurors read the instructions that were submitted to them. Under *Fulminante*, a structural defect in the conduct of criminal proceedings that precludes a harmless error analysis compels an automatic reversal. *Id.* at 1265.

The trial court rejected Marquez's request that the instructions on the elements of the alleged offenses be read to the jury. It would be unjust for this court to deny Marquez a new trial because the trial court adopted a procedure that makes it impossible to determine if its error was prejudicial.

We hold, therefore, that the refusal of a trial court to read the elements of an alleged offense to the jury compels an automatic reversal because the impact of the error on the jury's performance of its duties cannot be reviewed.

REVERSED and REMANDED.