**Cedric Roshawn HARMON, Petitioner–Appellee,**

v.

**Charles D. MARSHALL, Warden of Pelican Bay State Prison; Daniel E. Lungren, Attorney General of the State of California, Respondents–Appellants.**

No. 94–55733.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1995.

Decided June 9, 1995.

Amended Opinion Oct. 24, 1995.

Janet E. Burns, Deputy Attorney General, Los Angeles, California, for respondent-appellant.

Andrew E. Rubin, Washington, D.C., for petitioner-appellee.

Before BROWNING, D.W. NELSON and HAWKINS, Circuit Judges.

## PER CURIAM:

We are called upon to determine whether the complete failure to instruct a jury in a criminal case with respect to a particular offense requires automatic reversal of a conviction on collateral review. At the outset, we emphasize that this case does not involve the failure to instruct on a single element of an offense, but the failure to instruct on *any* element of a particular offense. As did the district court, we conclude that the failure to give the jury any definition of an offense at all is such fundamental and basic error that it cannot be harmless.

## I.

Charles D. Marshall, Warden of Pelican Bay State Prison, ("Marshall") appeals the district court's grant of the habeas corpus petition of Cedric Roshwan Harmon ("Harmon"). Harmon challenges two of the twelve counts of which he was convicted because no instruction at all was given to the jury in his criminal trial on any of the elements of the offense constituting those two counts. Marshall concedes, as he must, that the trial court in fact failed to give the jury any instruction with respect to the elements of the challenged offenses. Marshall further concedes that the failure to instruct amounts to constitutional error; he contends, nonetheless, that the error was harmless. The district court held that the failure to instruct at all—the failure to give the jury any definition of any of the elements of an offense—cannot be analyzed by harmless error principles and requires automatic reversal. We agree.

## II.

■ The district court's grant of a petition for habeas corpus is reviewed de novo. *Adams v. Peterson,* 968 F.2d 835, 843 (9th Cir.1992) (en banc), *cert. denied,* — U.S. —, 113 S.Ct. 1818, 123 L.Ed.2d 448 (1993).

## III.

■ The Supreme Court has long emphasized the constitutional right to have a jury, rather than a judge, find the existence of each element of a charged offense beyond a reasonable doubt. *See, e.g., In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970); *Sandstrom v. Montana,* 442 U.S. 510, 520, 99 S.Ct. 2450, 2457, 61 L.Ed.2d 39 (1979). Most recently, in *Sullivan v. Louisiana,* — U.S. —, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Court reiterated the fundamental nature of that right. *Sullivan* teaches that a constitutionally deficient reasonable doubt instruction deprives the defendant of his basic right to a jury verdict and "vitiates all the jury's findings." *Id.* at —, 113 S.Ct. at 2082. Moreover, the error is not subject to harmless error analysis—which focuses on the basis upon which the jury *actually* rendered its verdict—because there is no jury verdict within the meaning of the Sixth Amendment, and thus "no object upon which harmless error scrutiny can operate." *Id.* An appellate court can only engage in speculation about what the jury found. *Id.*

> The Sixth Amendment requires more than appellate speculation about a hypothetical jury's actions, or else directed verdicts for the state would be sustainable on appeal; it requires an actual jury finding of guilty.

*Id.* (citation omitted).

■ *Sullivan* also relies upon the distinction set forth in *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), between:

> "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless error' standards," and ... trial errors which occur "during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented."

*Sullivan,* — U.S. at — – —, 113 S.Ct. at 2082–83 (quoting *Fulminante,* 499 U.S. at 307, 309). The erroneous reasonable doubt instruction is a structural defect because it affects the defendant's basic right to a *jury* verdict, with consequences that are "necessarily unquantifiable and indeterminate." *Id.* at —, 113 S.Ct. at 2083.

Applying *Sullivan* and other Supreme Court authority, we have held that omitting instruction on, or otherwise failing to submit to the jury, *one* element of an offense is

reversible per se. *United States v. Gaudin,* 28 F.3d 943, 951 (9th Cir.1994) (en banc), *affirmed* — U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); *United States v. Stein,* 37 F.3d 1407, 1410 (9th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1170, 130 L.Ed.2d 1124 (1995). *See also United States v. Hove,* 52 F.3d 233, 236 (9th Cir.1995). We recognized that harmless error analysis was not feasible in the face of such an omission:

> [W]e may no longer consider the strength of evidence and determine whether it was so clear that the jury *would have* found the element of a crime to exist, had it been properly instructed, but, instead, we must determine whether the jury was actually able to consider that evidence under the instructions given by the court.

*Gaudin,* 28 F.3d at 951.

We previously came to the same conclusion in *People of the Territory of Guam v. Marquez,* 963 F.2d 1311 (9th Cir.1992), where the trial court had sent a set of written instructions to the jury, but did not read those instructions aloud. We held that this error could not be analyzed under harmless error standards "because the impact of the error on the jury's performance of its duties cannot be reviewed." *Id.* at 1316. It is impossible to know whether the jury in fact read the instructions on the elements of the charged offenses. *Id.*

■ The error in this case is considerably more egregious than that in *Gaudin* and *Stein,* where only one element was omitted, as well as *Marquez,* where the jury received proper written instructions. The jury here was not given instruction (oral or written) on *any* element of the counts Harmon challenges. This error is more akin to that in *Sullivan,* because the entire basis for the jury verdict was tainted; we cannot be sure that the jury made *any* of the requisite factual findings.

As the district court quite properly concluded, this error requires automatic reversal. The error undoubtedly affected Harmon's constitutional right to a proper jury verdict. *See Sullivan,* — U.S. at —— ——, 113 S.Ct. at 2080–81 (Due Process Clause and Sixth Amendment require that the fact finder determine beyond a reason-

able doubt the facts necessary to establish each element of offense). We find it difficult to imagine a more fundamental or structural defect than allowing the jury to deliberate on and convict Harmon of an offense, for which it had *no* definition. *See id.* at ——, 113 S.Ct. at 2083 (deprivation of the "basic protection" of having a jury make the requisite finding of guilt "unquestionably qualifies" as a "structural defect" under *Fulminante,* 499 U.S. at 279, 111 S.Ct. at 1248). In effect, the jury was free to convict Harmon without finding that the State proved any of the requisite elements of the crime. There is no way we can determine the extent to which Harmon's convictions were actually affected by the failure to instruct, because we simply cannot tell how the jury reached its decision.

Marshall insists that the evidence establishing Harmon's guilt on these very serious charges was overwhelming. We agree. But this does not change our result. We cannot judge the defendant guilty; that role is reserved for the jury. *Id.*

> [N]o matter how clear evidence may be, the Sixth Amendment requires that the jury, not the judge, must find the facts necessary to decide [the] element[s] of a crime beyond a reasonable doubt.

*Gaudin,* 28 F.3d at 951. *See also United States v. Howard,* 506 F.2d 1131, 1134 (2nd Cir.1974) (failure to instruct on all elements of offense cannot be harmless even though elements not instructed on were not contested at trial).

## IV.

■ *Gaudin* and *Stein* involved the direct review of federal convictions. Here we deal with the collateral review of a state court conviction. Because of this, Marshall argues that our result is barred by *Teague v. Lane,* 489 U.S. 288, 305–10, 109 S.Ct. 1060, 1072–75, 103 L.Ed.2d 334 (1989), which prohibits the retroactive application of a "new" constitutional rule of criminal procedure on collateral review. A "new rule" is one that "breaks new ground or imposes a new obligation on the States or the Federal Government," or "was not *dictated* by precedent existing at the time the defendant's convic-

tion became final." *Id.* at 301, 109 S.Ct. at 1070; *see also Graham v. Collins,* 506 U.S. 461, ——, 113 S.Ct. 892, 898, 122 L.Ed.2d 260 (1993) (rule is "new" under *Teague* unless a reasonable jurist hearing the habeas petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to rule in his favor). Marshall argues that *Sullivan* announced such a new rule, which cannot be retroactively applied to overturn Harmon's convictions on the counts in question. We disagree.

■ We need not consider whether the rule announced in *Sullivan* was "new," because even if it was, there is an exception to the *Teague* retroactivity doctrine which quite clearly applies in this case. The exception is for "new procedures without which the likelihood of an accurate conviction is seriously diminished;" or which implicate "the fundamental fairness of the criminal proceeding." *Teague,* 489 U.S. at 311, 313, 109 S.Ct. at 1076, 1077. Any rule announced in *Sullivan* and its application to this case is central to an accurate determination of Harmon's guilt and implicates the fundamental fairness of his trial.

We reiterate that this is not a case where jury instructions simply omitted or misstated one or more elements of an offense, but a wholesale failure to define an offense for the jury. This is tantamount to telling the jury to "go in there and do whatever you think is right." The failure to instruct at all deprived Harmon of his basic right to jury findings on the elements of the crime with which he was charged, "without which a criminal trial cannot reliably serve its function." *Sullivan,* —— U.S. at ——, 113 S.Ct. at 2083 (citation and internal quotation marks omitted); *Fulminante,* 499 U.S. at 310, 111 S.Ct. at 1265 (trial infected with structural defect "cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair") (citation and internal quotation marks omitted). *See also Adams v. Aiken,* 41 F.3d 175, 178–79 (4th Cir.) (under the teachings of *Sullivan,* the retroactive

application of the new rule that a deficient reasonable doubt instruction violates due process is not barred by *Teague* ), *cert. denied,* —— U.S. ——, 115 S.Ct. 2281, 132 L.Ed.2d 284 (1995), *accord Nutter v. White,* 39 F.3d 1154, 1157–58 (11th Cir.1994). We think it plain that there can be no fundamental fairness in a system that allows a jury to convict a defendant of a crime, for which it has utterly no definition.

V.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**