**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

CESAR ANTONIO BECERRA,
*Defendant-Appellant.*

No. 17-30050

D.C. No.
3:14-cr-00227-MO-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, Chief District Judge, Presiding

Argued and Submitted March 7, 2019
Portland, Oregon

Filed September 23, 2019

Before: Susan P. Graber and Marsha S. Berzon, Circuit
Judges, and Eduardo C. Robreno,* District Judge.

Opinion by Judge Berzon;
Dissent by Judge Graber

---

*  The Honorable Eduardo C. Robreno, United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

Reversing a conviction and remanding for a new trial, the panel held that it is bound by the holdings in *Guam v. Marquez*, 963 F.2d 1311 (9th Cir. 1992), that a trial court does not satisfy its duty to instruct jurors in a criminal case just by providing jurors with a set of written instructions to use during deliberations, and that when a trial court abdicates its responsibility to charge the jury orally as to the elements of the charged crimes, it commits structural error.

The panel held that because the trial judge in this case delivered no such oral charge, the requisites for reversing on plain error review have been met.

Dissenting, Judge Graber wrote that the error was harmless in this case in which the court gave the jury written instructions, the final versions of which defendant concedes were correct; the court orally instructed the jury to read those instructions; the jurors confirmed that they had read the written instructions; and the evidence of guilt was overwhelming.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Michael R. Levine (argued), Levine & McHenry LLC, Portland, Oregon, for Defendant-Appellant.

Thomas S. Ratcliffe (argued), Assistant United States Attorney; Kelly A. Zusman, Appellate Chief; Billy J. Williams, United States Attorney; United States Attorney's Office, Portland, Oregon; for Plaintiff-Appellee.

**OPINION**

BERZON, Circuit Judge:

Our circuit held nearly thirty years ago that oral instructions to the jury as to the law they must apply are an essential feature of a jury trial. *Guam v. Marquez*, 963 F.2d 1311, 1314–15 (9th Cir. 1992). A trial court does not satisfy its duty to instruct jurors in a criminal case just by providing those jurors with a set of written instructions to use during deliberations. *Id.* We further determined that when a trial court abdicates its responsibility to charge the jury orally as to the elements of the charged crimes, it commits structural error. *Id.* at 1315–16. We are bound by those holdings and so reverse the conviction in this case.

**I**

In February 2016, Cesar Becerra was tried on six counts for crimes related to the possession and distribution of heroin and methamphetamine.[1] During the final pretrial

---

[1] Specifically, Becerra proceeded to trial on the following charges: (1) possession with intent to distribute heroin in June 2014;

conference, the district court told the parties that it would provide the jurors with written copies of the jury instructions at the beginning of the trial. The court explained that it would confirm with the jurors at some point during the trial that they had in fact read the provided instructions. So long as the instructions were not subsequently changed, the court said, it would not read the instructions aloud to the jurors. Neither party objected to this planned course of action.

The district court implemented its plan largely as announced. On the morning of the first day of trial, each juror was provided a set of draft jury instructions. These instructions, which largely followed our circuit's model jury instructions, included explanations of the substantive offenses and definitions of key terms, such as "reasonable doubt," "possession," and "knowingly." *See* Model Crim. Jury Instr. 9th Cir. §§ 1.5, 1.7, 1.8, 3.1–3.2, 3.5–3.9, 3.11, 3.14–3.15, 3.18, 4.1, 4.8–4.9, 4.14, 4.17, 5.7, 6.10, 7.1, 7.3–7.6, 8.72, 9.15–9.16, 9.18 (2010). The court told the jurors to read the provided instructions: "I'm not going to give you a quiz on" the instructions, the court said, "but you will be asked if you read it. So please read it tonight."

When it gave them the written instructions, the court read aloud to the jurors a few preliminary instructions, which, as the court explained, were "geared to . . . telling you a little bit about your job as jurors." These instructions included, for example, an explanation of the jurors' duty to deliberate, a brief, non-technical explanation of the charges being tried,

---

(2) possession with intent to distribute heroin in February 2014; (3) possession of a 9 mm caliber firearm in furtherance of a drug-trafficking crime in February 2014; (4) possession of a .22 caliber firearm in furtherance of a drug-trafficking crime in February 2014; (5) possession with intent to distribute heroin in December 2012; and (6) distribution of heroin in December 2011.

and an explanation of what is (and what is not) evidence. These preliminary oral instructions did not include any explanation of the elements of the three crimes charged in the six counts, or otherwise guide the jurors as to the substantive law they were expected to apply. After a recess, the trial commenced with the parties' opening statements.

At the close of evidence on the next trial day, the district court retrieved the draft jury instructions from those jurors who had brought the instructions back to the courthouse and provided each juror with a set of final instructions to use during deliberations. The court then asked Juror No. 1 in open court: "[H]ave you read each and every one of [the draft] instructions . . . ?" Juror No. 1 said, "Yes." The court continued: "Two?", "Three?", and so on through "Twelve?" and "Our alternate?" Each juror, in turn, responded: "Yes." No further follow-up was conducted by either the court or the parties to assess whether the jurors had fully read and understood the draft instructions they had been provided.

Between the draft and final instructions, one instruction was added and two were modified. Specifically, the court (1) added an instruction explaining how the jurors should treat evidence of acts not charged; (2) added a sentence to the instruction explaining how jurors should evaluate the evidence of a cooperating witness; and (3) removed a sentence in an instruction on the lesser-included offense of possession of a controlled substance. The court notified the jurors of these changes and read the full text of the three new and modified instructions aloud. The district court did not after the close of evidence read aloud any of the remaining twenty-seven instructions, or otherwise orally instruct the jurors as to the substantive law.

The parties then delivered closing arguments to the jurors. The next morning, the jurors returned to deliberate. They reached a guilty verdict on all six counts that same day.

In March 2017, the district court sentenced Becerra to 60 months of incarceration. Becerra timely appealed.

## II

Becerra's principal argument on appeal is that the district court erred by not reading the jury instructions aloud to the jury.[2] Becerra did not object in the district court to the plan to provide primarily written instructions or to the implementation of that plan. We therefore review the failure to provide an oral jury charge for plain error. *United States v. Depue*, 912 F.3d 1227, 1233 (9th Cir. 2019) (en banc). Under plain error review, we may reverse a district court's ruling only if (1) there was error, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 1232.

## A

The first two requirements are clearly met. We disapproved an essentially similar trial procedure in *Marquez.* The trial court in *Marquez*, like the district court here, never orally instructed the jurors as to the charged crimes. 963 F.2d at 1312. Instead, the jurors in *Marquez* were provided, after closing arguments, with a set of written jury instructions that included "the elements of the crimes"

---

[2] Becerra also appeals the district court's denial of his motion to suppress. We affirm the district court's decision to deny the motion to suppress in a memorandum disposition filed contemporaneously with this opinion.

being tried and the definitions for terms "mentioned in the description[s] of the offense[s] . . . ." *Id.* at 1312–13. Before sending the jurors to deliberate, the trial court in *Marquez* advised the jurors that it had provided them with written jury instructions. It then told the jurors: "You will have [the instructions] with you, so there is no need of reading it to you." *Id.* at 1313.

*Marquez* held that it was error for the trial court not "to instruct the jury on the elements of the [charged] offense before submitting [the] matter to the jury." *Id.* at 1314. Just providing jurors with written instructions delineating the elements of the charged offenses was not enough.[3] *Id.* at 1315–16. Relying on the Third Circuit's decision in *United States v. Noble*, 155 F.2d 315 (3d Cir. 1946), *Marquez* reasoned that an oral jury charge is necessary to ensure that "each member of the jury has actually received the instructions."[4] 963 F.2d at 1314 (quoting *Noble*, 155 F.2d at 318).

---

[3] *Marquez* at one point says that "*all* jury instructions must be read aloud to the jury in the presence of counsel and the defendant." 963 F.2d at 1314–15 (emphasis added). This summary may overstate the holding of the case. Elsewhere in the opinion, *Marquez* states that the trial court erred by not reading aloud "instructions defining the offense charged." *Id.* at 1314; *see also id.* at 1315. The difference does not matter here. The trial court here did not read aloud any of the offense-defining instructions nor most of the other instructions.

[4] *Marquez* and *Noble* further reasoned that oral instructions are necessary because "counsel and the defendant [are] entitled to hear the instructions in order that they may, if they are incorrect, object to them and secure their prompt correction by the trial judge." *Id.* at 314 (quoting *Noble*, 155 F.2d at 318). This secondary rationale lacks persuasive force. As long as jury instructions are provided in written form to the parties

*Marquez*'s holding that an oral charge is a necessary feature of our criminal trial process reflects the critical importance of communicating effectively to jurors in detail the legal principles governing their deliberations. Jurors in our criminal justice system are delegated the awesome responsibility of determining the innocence or guilt of a defendant put before them. A determination of guilt can, of course, severely restrict a defendant's physical liberty for years or decades. And the jury's decision will generate a cascade of other consequences: A citizen found guilty often is unable to participate in our democratic system by voting, *see, e.g.*, Wash. Const. art. VI, § 3; Or. Rev. Stat. § 137.281(3)(d); a non-citizen may lose her ability to remain in the country, *see, e.g.*, *Martinez v. Mukasey*, 551 F.3d 113, 118 n.3 (9th Cir. 2008).

Because jurors are assigned such a critical role in our criminal justice system, "[i]t is essential to the administration of justice that a jury scrupulously follow the law as given to it by the judge, and to that end his instructions should be clear and firmly fixed in the mind of each juror." *Babson v. United States*, 330 F.2d 662, 666 (9th Cir. 1964). Since before the founding of our Republic, courts have

---

sufficiently in advance, objections can be made well before instructions are distributed to the jurors.

Federal Rule of Criminal Procedure 30 has long required that trial courts provide the parties with an opportunity to make specific objections to the jury instructions; that opportunity must take place "out of the jury's hearing and, on request, out of the jury's presence." Fed. R. Crim. P. 30(d). In practice, district courts comply with this rule by providing the parties an opportunity to review and to object to the planned instructions before they are read to the jury. 2A Fed. Prac. & Proc. Crim. § 484 (4th ed.); *see also United States v. Loya*, 807 F.2d 1483, 1492 (9th Cir. 1987); *Las Vegas Merchant Plumbers Ass'n v. United States*, 210 F.2d 732, 744 (9th Cir. 1954).

universally met the need to educate jurors by orally advising jurors "in the presence of the parties, the counsel, and all others . . . in matters of law arising upon th[e] evidence." 3 William Blackstone, *Commentaries* \*375; *see also United States v. Robinson*, 724 F.3d 878, 887 (7th Cir. 2013); *Noble*, 155 F.2d at 317 n.1 (quoting Thomas M. Cooley, *Constitutional Limitations* \*321 (1st ed. 1868)).

There are excellent reasons this feature of our trial process endures. For one, many jurors may not adequately comprehend written instructions. It is no secret that jury instructions are often written in language more suitable for lawyers than laypersons. *See, e.g.*, Jonathan Barnes, *Tailored Jury Instructions: Writing Instructions that Match a Specific Jury's Reading Level*, 87 Miss. L.J. 193, 195 (2018); Prentice H. Marshall et al., *Pattern Criminal Jury Instructions: Report of the Federal Judicial Center Committee to Study Jury Instructions*, at vii, 79–83 (1982); Phil H. Cook, *Instructionese: Legalistic Lingo of Contrived Confusion*, 7 J. Mo. B. 113 (1951). Written instructions can be especially impenetrable for those jurors with limited reading comprehension skills.[5] *See* Laurence J. Severance et. al., *Toward Criminal Jury Instructions that Jurors Can Understand*, 75 J. Crim. L. & Criminology 198, 224 (1984); Robert P. Charrow & Veda R. Charrow, *Making Legal*

---

[5] This group of jurors is not insignificant. Fourteen percent of American adults have less than basic prose literacy; these adults range from the nonliterate to those with the ability to "locat[e] easily identifiable information in short, commonplace prose texts." Nat'l Ctr. for Education Statistics*, A First Look at the Literacy of America's Adults in the 21st Century* 2–4 (2006). Another 29 percent have only basic prose literacy—in other words, can "read[] and understand[] information in short, commonplace prose texts." *Id.* at 3. Only 13 percent of American adults have the skills necessary to "read[] lengthy, complex, abstract prose texts." *Id.*

*Language Understandable: A Psycholinguistic Study of Jury Instructions*, 79 Colum. L. Rev. 1306, 1320–21 (1979).  And even if a jury is comprised of an unusually educated cross-section of the community, many of us at times succumb to the temptation to glaze over a long paragraph of text or flip over a few pages of a lengthy stack of papers.  When the instructions are read orally, tonal inflection can make the content of the instructions more accessible, as well as discourage the "tuning out" common when reading dense material.  Oral instruction in the formal courtroom setting thus assures that jurors are exposed to the substance of the essential instructions by at least one sensual route.

The oral charge also performs a second, signaling function that cannot be replaced by a printout or a pamphlet.  Jury instructions are not the judicial equivalent of a car manual or a cookbook.  When an enrobed judge orally charges the jury, the jurors are impressed with the fact that they have been entrusted with the power to decide the defendant's fate.  This oral, public ritual helps ensure that "jurors . . . recognize the enormity of their task and . . . take [that task] seriously."  Nancy S. Marder, *Bringing Jury Instructions into the Twenty-First Century*, 81 Notre Dame L. Rev. 449, 465 (2006).  By analogy, reading a sermon is not the same as hearing it read in church or synagogue by a pastor or priest or rabbi.  If it were, religious leaders would just hand out the sermons and end the services early.

For these reasons, the historic practice of oral jury instruction remains central to the fairness of jury trials.  That conclusion does not mean that procedures for instructing juries have remained static—or should.  *Additions* to oral instructions have enhanced the likelihood that jury instructions will effectively communicate to jurors the legal principles governing their critical task.  *See id.* at 475–82.

For example, pattern jury instructions, now routinely promulgated and updated, originated in the early 20th century and became widely used in the 1960s.[6] *See* Robert G. Nieland, *Assessing the Impact of Pattern Jury Instructions*, 62 Judicature 185, 185–87 (1978). Also, although the use of written jury instructions was once a rarity, courts now often supplement oral jury instructions with written ones, giving them to jurors to read contemporaneously with the oral instructions or to take to the jury room after the oral charge. *See* Cal. Penal Code §§ 1093(f), 1137 (providing jurors with a right to request written instructions); Ninth Circuit Jury Instruction Committee, *Manual of Model Criminal Jury Instructions* § 3.1 (2010) ("A copy of these instructions will be available in the jury room for you to consult."); *see also* William W. Schwarzer, *Communicating with Juries: Problems and Remedies*, 69 Calif. L. Rev. 731, 756–57 (1981). Written instructions are mandatory in some jurisdictions. *See, e.g.*, Or. Rev. Stat. § 136.330 (1); Or. R. Civ. P. 59(B); Wash. Sup. Ct. Civ. R. 51(h). We have no doubt that there is room for more useful innovation as to both how jury instructions are drafted and how they are communicated to the jurors.[7]

---

[6] As another example, Federal Rule of Criminal Procedure 30 was modified in 1987 to allow district courts to charge the jury either before or after closing arguments. *See* Fed. R. Crim. P. 30 *Advisory Committee's Note to 1987 Amendment*.

[7] Scholars, judges, and lawyers have long recognized that jurors far too often decide cases without an adequate understanding of the law they are required to apply. *See, e.g.*, *United States v. Cohen*, 145 F.3d 82, 93 (2d Cir. 1942) (Hand, J.); Nancy S. Marder, *Bringing Jury Instructions into the Twenty-First Century*, 81 Notre Dame L. Rev. 449, 454–58 (2006); Schwarzer, *Communicating with Juries: Problems and Remedies*, *supra*; David U. Strawn & Raymond W. Buchanan, *Jury Confusion: A Threat to Justice*, 59 Judicature 478, 480–81 (1976); Wylie A Aitken, *Comment: The Jury Instruction Process—Apathy or*

But even as the exact form of a trial court's jury charge has evolved, there has always been a bedrock recognition that the trial court must orally charge the jury before deliberations commence.

Notably, the government in this case does not contend otherwise. It recognizes that, as *Marquez* makes clear, the district court in this case erred by not reading the essential jury instructions aloud. Rather, the government's central contention is that *Marquez* is not here binding as to its second holding—that the failure of the district court to read jury instructions aloud to the jurors in open court is structural error and so not subject to harmless error analysis. We turn to that contention.

## B

Contrary to the government's submission, *Marquez* is binding on us not only with regard to its substantive holding as to the necessity of oral jury instructions but also as to its second holding—that the district court committed structural error by failing to read an oral charge to the jurors.

*Marquez*'s conclusion that the omission of an oral charge is structural error rests primarily on its observation that an appellate court cannot meaningfully assess whether failure to provide oral instructions impacted "the jury's performance of its duties" in a particular trial. *Id.*at 1315–16. In *Marquez*, "the record [was] silent regarding whether any of the jurors read the instructions that were submitted to them." *Id.* at 1316. Here, there was an attempt to ascertain

*Aggressive Reform*, 49 Marquette L. Rev. 137, 137 n.2 (1965); Robert Winslow, *The Instruction Ritual*, 13 Hastings L. J. 456, 469–70 (1962).

that the jurors read the instructions provided to them.[8]  But we do not assess whether an error is structural on a case-by-case basis.  "[A] constitutional error is either structural or it is not."  *Neder v. United States*, 527 U.S. 1, 14 (1999).  "An error can count as structural even if the error does not lead to fundamental unfairness in every case."  *Weaver v. Massachusetts*, ___ U.S. ___, 137 S. Ct. 1899, 1908 (2017).

The dissent takes issue with this recent Supreme Court pronouncement, arguing that "deciding whether a particular error is properly labeled 'structural' entails a close look at specifics."  Of course, we must determine on a case-by-case basis *whether* there was an error, and, if so, *whether* that kind of error is structural.  Failure to conduct a trial in public absent any factual findings is error, *Waller v. Georgia*, 467 U.S. 39, 45–46 (1984), and structural, *see id.* at 49–50; conducting a trial or hearing after making adequate factual findings is not error at all.  *Id.* at 45.  Omission of a single element of the charged offense from the jury instructions is error, but not structural error, *Neder*, 527 U.S. at 8–11; omission of the burden of proof from those instructions is error, and structural, *see id.* at 11.  And in some instances where a structural error has occurred, the relief required to cure that error may not result in a new trial for the defendant. *Waller*, 467 U.S. at 49–50.  But none of these caveats means

---

[8] We note that the trial judge's questioning of the jurors was perfunctory, and the jurors were not placed under oath.  Moreover, the jurors' "yes" answers do not establish that they read the instructions carefully enough to comprehend their essentials. A simple "yes" also does not answer: Did the juror read the instruction alone or with one or more persons? Did the juror read the instructions in one or more sittings? Did the juror consult dictionaries or other legal sources to help him or her understand any terms? Did the juror discuss the instructions with other jurors or other persons? Did the juror read the instructions while engaged in other activities such as watching television?

that once we identify an error that is structural in kind—here, failure to instruct the jury orally—we reconsider whether that error should be deemed structural in the specific case before us.

Of course, there may be some cases where it is hard to discern whether the trial court acted in a manner that we have already deemed structural error, or whether the trial court committed error that is related but distinct in kind. *Cf. Johnson v. United States*, 520 U.S. 461, 469 (1997). This is not that case. The error held structural in *Marquez* was the failure of the judge orally "to read the elements of the crime to the jury," 963 F.3d at 1315 (capitalization modified); it was not the failure to ascertain whether the jury read written instructions provided to it in lieu of oral instruction.

Thus, under *Marquez*, the failure to instruct the jury orally was structural error absent some intervening higher legal authority "clearly irreconcilable" with *Marquez. Gammie*, 335 F.3d at 900; *see also United States v. Xinidakis*, 598 F.3d 1213, 1216 (9th Cir. 2010). There is no such authority.

No *en banc* case or Supreme Court case has held that the failure to instruct the jury orally is *not* structural error. And the overall reach of the structural error doctrine has remained largely the same since *Marquez* was decided in 1992. Then and now, "[t]he purpose of the structural error doctrine [has been] to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Weaver*, 137 S. Ct. at 1907. The "defining feature" of such error, is that it "'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Id.* (quoting *Arizona v. Fulminante*, 499 U.S. 306, 310 (1991)) (alteration in

original). *Marquez* cited *Fulminante*. *See* 963 F.2d at 1315–16.

*Marquez*'s *reasoning* is not irreconcilable with later case law either. One of *Marquez*'s central premises for its structural error holding—that the failure to provide any oral instructions to the jurors is an error that as a practical matter "precludes a harmless error analysis," *id.* at 1316—is fully compatible with post-*Fulminante* case law. The Supreme Court in *Weaver* recently explained that a structural error approach is appropriate for cases in which "the effects of the error are simply too hard to measure," making harmless error review futile. 137 S. Ct. at 1908.

In sum, neither *Marquez*'s holding nor its reasoning is at odds with now controlling structural error precedents. We therefore remain bound by *Marquez*. The virtually complete failure to instruct the jurors orally was structural error.

## C

Even if we were not bound by *Marquez*, we would nonetheless conclude that it is appropriate to categorize the failure to charge jurors orally as structural error.

As the Court explained recently in *Weaver*, an error is usually deemed structural for at least one of three broad reasons, although "[i]n a particular case, more than one of these rationales may be part of the explanation for why an error is deemed to be structural." *Id.* at 1908. First, an error is structural if it "deprive[s] defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence," *Neder*, 527 U.S. at 8–9 (quoting *Rose v. Clark*, 478 U.S. 570, 577–78 (1986)); *see also Weaver*, 137 S. Ct. at 1908. Second, errors have been found structural where

the effect of those errors are "necessarily unquantifiable and indeterminate," making a harmless error analysis impossible. *Neder*, 527 U.S. at 11 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993)); *see also Weaver*, 137 S. Ct. at 1908. Finally, certain errors have been considered structural where the "right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest." *Weaver*, 137 S. Ct. at 1908; *see also McKaskle v. Wiggins*, 465 U.S. 168, 177, n.8 (1984). Each of these rationales is implicated by the failure to instruct the jury orally.

*First*, for the reasons discussed earlier, assuring that jurors are generally aware of the law to be applied is a protection without which a criminal trial cannot reliably serve its function. When a trial court does not provide the jurors with an oral charge, there has not "simply [been] an error in the trial process." *Weaver*, 137 S. Ct. at 1907 (quoting *Fulminante*, 499 U.S. at 310). The oral charge serves both to ensure that jurors are aware of the correct law and to instill in the jurors proper sense of respect for the jury's role in the criminal justice process. *See supra* at 8–12. Without an oral jury charge, the court has omitted a fundamental and ubiquitous feature of the criminal trial framework—the equivalent of holding no voir dire before selecting a jury, or holding the trial outside of public view. *See Waller*, 467 U.S. at 49 n.9. Moreover, just as presidents take the oath of office in public rather than by signing in private a document containing the oath, so as to convey that the president's duty is of profound importance, the oral delivery of jury instructions in open court, by a judge wearing a robe, sitting before the prosecution, defendants, the jury, and the courtroom audience, conveys to the jurors that the jury's responsibility is of profound importance, as it

indeed is.**[9]**   That recognition as well is essential to the functioning of the jury system.

*Second*, the impact on the jurors' verdict of a failure to instruct jurors orally is "necessarily unquantifiable and indeterminate." *Neder*, 527 U.S. at 11 (quoting *Sullivan*, 508 U.S. at 282).   Because the court's failure to instruct implicates "*all* of the jury's findings," *Sullivan*, 508 U.S. at 281, whether the jurors would have ruled the same way had they been orally instructed cannot meaningfully be determined after the fact.   To assess harmless error in this circumstance, a "reviewing court can only engage in pure speculation—its view of what a reasonable jury would have done."   *Id.*   Even where the evidence of guilt is overwhelming, the entire premise of the jury trial system is that jurors, not judges, are entrusted with determining whether to believe the evidence presented and then apply the law to the facts determined to be true.   Where, as here, the lapse as to assuring the jurors' performance of its task is not partial but complete, an after-the-fact appraisal simply amounts to a denial of the constitutionally guaranteed trial by jury.**[10]**

---

**[9]** It is worth noting that "in a jury trial . . . a verdict . . . must be rendered by the jury in open court . . . in order to become final." *Gouveia v. Espinda*, 926 F.3d 1102, 1115 (9th Cir. 2019) (quoting *Harrison v. Gillespie*, 640 F.3d 888, 898 (9th Cir. 2011)).   This court has recognized that rendering a verdict in open court cannot be equated with writing that same verdict on a piece of paper behind closed doors and delivering the document to the judge.   Similarly, the act of reading jury instructions at home is not equivalent to hearing a judge read those instructions aloud in open court.

**[10]** By contrast, the Court held in *Neder* that the omission of a single element of the charged offense from the jury instructions was not structural error, because in that circumstance, the failure "did not

*Third*, without an oral charge, a key aspect of the trial is hidden from public observation, and the solemnity of the occasion for the public is fatally compromised. In this respect, the error is directly connected to denial of the right to a public trial and so implicates the third *Weaver* category—protection of "some other interest." 137 S. Ct. at 1908. Here, that interest is the involvement of the public—including the media—in viewing the important aspects of trials, including the charge to the jury.

In short, all three of *Weaver*'s rationales for holding an error is structural are present here. Oral instruction as to the legal framework the jury must apply is a "basic[] constitutional guarantee[]" that must occur in all criminal trials, and failure to so instruct a jury is structural error. *Id.* at 1907.

## D

The third requisite of plain error review is necessarily met where the error at issue is structural. *See United States v. Yamashiro*, 788 F.3d 1231, 1236 (9th Cir. 2015) ("a finding of structural error satisfies the third prong of the *Olano* plain-error test" (quoting *United States v. Recio*, 371 F.3d 1093, 1101 (9th Cir. 2004))). *Cf. United States v. Chavez-Cuevas*, 862 F.3d 729, 734 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1179 (2018) (stating that when an error "implicates a structural right, the error affects substantial rights, and undermines the fairness of a criminal proceeding as a whole" (citations omitted)).

---

'vitiat[e] *all* of the jury's findings." 527 U.S. at 11 (quoting *Sullivan*, 508 U.S. at 281).

The failure to instruct the jury orally in this case also "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings," satisfying the fourth element necessary to reverse under plain error review. *Depue*, 912 F.3d at 1232. The same reasoning that justifies categorizing this error as structural supports this conclusion. *See supra* pp. 15–18. It is impossible to know whether the jury would have come to the same conclusion had the judge orally instructed them as to the elements of the charges. Such uncertainty undermines the fairness and integrity of these judicial proceedings. In addition, where, as here, there is definitive precedent precluding the district court's conduct, the "flagrant nature of the district court's error . . . seriously affects the public reputation of judicial proceedings." *United States v. Hammons*, 558 F.3d 1100, 1105 (9th Cir. 2009) (citations omitted) (holding a district court's failure to state its reasoning for a sentence on the record, as required by established Supreme Court and Ninth Circuit law, to be plain error). Finally, as noted earlier, assuring public awareness of the charge to the jury and promoting the dignity and formality of a critical stage of the criminal trial are among the underpinnings of the oral instruction requirement. These values rest on the very same concerns for the "fairness, integrity, [and] public reputation of judicial proceedings" that comprise the fourth plain error factor. *Depue*, 912 F.3d at 1232.

For these reasons, we exercise our discretion to notice the plain error committed by the district court in this case.

## III

Under *Marquez*, it is structural error not to instruct the jury orally as to the entire substantive law the jury must apply. Because the trial judge here delivered no such oral charge, the requisites for reversing on plain error review

have been met. We therefore reverse the conviction and remand for a new trial.

**REVERSED AND REMANDED.**

---

GRABER, Circuit Judge, dissenting:

I respectfully dissent. The district court erred by failing to read all the instructions to the jury aloud. But the error was clearly harmless in this particular case. The court gave the jury written instructions—the final versions of which Defendant concedes were entirely correct—and orally instructed the jury to read those instructions. The jurors confirmed—individually and in open court—that they had in fact read the written instructions, and the evidence of Defendant's guilt was overwhelming.

Neither the majority nor Defendant refutes that analysis. Instead, the majority holds that the instructional error falls into the narrow class of errors deemed "structural" and that, accordingly, we may not assess harmlessness. I disagree that the error in this case is properly classified as structural. Accordingly, I would hold that the error did not affect Defendant's substantial rights. Additionally, even assuming that the error affected his substantial rights, I would hold that this case does not warrant the exercise of our discretion because the error did not seriously affect the fairness, integrity, or public reputation of the trial.

Defendant did not object to the district court's method of instructing the jury, so we review for plain error only. *United States v. Olano*, 507 U.S. 725 (1993). "Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Depue*, 912 F.3d 1227, 1232 (9th

Cir. 2019) (en banc) (internal quotation marks omitted). If those conditions are met, we have "the discretion to grant relief so long as the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted). We held in *Guam v. Marquez*, 963 F.2d 1311, 1314–15 (9th Cir. 1992), that "all jury instructions must be read aloud to the jury in the presence of counsel and the defendant." So the error here was plain. But the error here neither affected Defendant's substantial rights nor warrants discretionary relief.

## A. *Substantial Rights and "Structural" Error*

The Supreme Court repeatedly has reserved the question whether a "structural" error *necessarily* affects a defendant's substantial rights. *See United States v. Marcus*, 560 U.S. 258, 263 (2010) (reserving the question and citing four previous cases that have reserved the question). The Court's recent jurisprudence strongly suggests to the contrary:

> Despite its name, the term "structural error" carries with it no talismanic significance as a doctrinal matter. It means only that the government is not entitled to deprive the defendant of a new trial by showing that the error was "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). Thus, in the case of a structural error *where there is an objection at trial* and the issue is raised on direct appeal, the defendant *generally* is entitled to automatic reversal regardless of the error's actual effect on the outcome.

*Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017) (emphases added) (some internal quotation marks omitted).

But even assuming that structural errors necessarily affect substantial rights, the error here was not structural.

"[M]ost constitutional errors can be harmless." *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991). The Supreme Court has recognized only "a very limited class of errors" as "structural." *United States v. Davila*, 569 U.S. 597, 611 (2013) (quoting *United States v. Marcus*, 560 U.S. 258, 263 (2010)). The requirement that all jury instructions be given orally is not among them. We labeled the error in *Marquez* "structural." But the sole reason for applying that label in *Marquez* leads necessarily to the opposite conclusion here. We held that the instructional error in *Marquez* was "structural" for one simple reason: "the record is silent regarding whether any of the jurors read the instructions that were submitted to them," so we could not assess harmlessness. 963 F.2d at 1316.[1]

Here, by contrast, the district court orally instructed the jury to read the written instructions, and each juror confirmed in open court that, in fact, he or she had read the instructions. The record thus establishes that the jury actually received the instructions. To conclude otherwise, not only would we have to put aside our ordinary presumption that jurors follow their instructions, *e.g.*, *United States v. Smith*, 831 F.3d 1207, 1215 (9th Cir. 2016), but we also would have to conclude that a juror affirmatively lied to the judge in open court. Nothing in the record supports either contention.

---

[1] The defendant in *Marquez* also objected to the procedure. 963 F.2d at 1313. Defendant here did not. That distinction also may matter under *Weaver*, 137 S. Ct. at 1910.

The majority acknowledges the foregoing analysis but then reasons that "we do not assess whether an error is structural on a case-by-case basis. '[A] constitutional error is either structural or it is not.' *Neder v. United States*, 527 U.S. 1, 14 (1999)." Maj. op. at 13. That reasoning fails for two independent reasons.

First, it proves too much. *Marquez* plainly held that the error was structural in that case solely because of the silence of the record. If later Supreme Court cases such as *Neder* have undermined that reasoning, then *Marquez* no longer controls because it applied an outdated understanding of whether an error is structural. *Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc).

Second, deciding whether a particular error is properly labeled "structural" entails a close look at specifics. A partial failure to instruct the jury is a *non*-structural error *unless* the omitted instruction pertains to the burden of proof. *Neder*, 527 U.S. at 8–15. A failure to conduct a trial in public is structural error *unless* the trial court makes certain factual findings. *Weaver*, 137 S. Ct. at 1909. A failure to conduct a suppression hearing in public requires a new trial *unless* the conclusion of a new suppression hearing is the same as the conclusion reached at the original hearing. *Waller v. Georgia*, 467 U.S. 39, 49–50 (1984).

*Marquez* did not hold that *any* failure to read aloud the jury instructions is structural. Nor did it hold that *any* failure to read aloud the instructions defining the offense is structural. Instead, in deciding whether the error was "structural," *Marquez* asked one and only one question: did the record reveal whether the jurors had read the written instructions? Only after determining that the record was silent on that question did *Marquez* hold that the error was structural. That approach is consistent with, for example, the

Supreme Court's approach in *Waller*: the error requires a retrial unless other circumstances obviate the need for a new trial. *Marquez* thus held only that, *when the record is silent as to whether the jurors read the written instructions*, the instructional error is properly labeled "structural." Here, by contrast, the record is complete as to that critical inquiry and demonstrates that the jurors did, in fact, read the written instructions. *Marquez* therefore does not control.

The majority next sets aside *Marquez* and provides its own reasons for concluding that the instructional error here is properly labeled "structural." Maj. op. at 15–18. None of the reasons is persuasive. Because the court orally instructed the jurors to read the written instructions and later put all jurors on the spot to confirm that they had, in fact, read the instructions, the proceedings were just as solemn as those in which a court reads all the instructions aloud. (The court read some of the instructions aloud.) The jury applied the correct law, as all the instructions were correct. Many people absorb information better in writing. Moreover, there is no way to know whether jurors are listening when oral instructions are given; some may be daydreaming or worrying about a sick relative, for example. Indeed, we know *more* in this case about the jurors' attentiveness than we know in most cases. Though instructions can sometimes be difficult to follow, the written instructions in this case were not. Nor were they especially numerous. Finally, the written instructions are part of the public record, so the proceedings were fully public.

I would hold that the error here was not "structural." Because the jury plainly received all the instructions, because the instructions were correct, because there were no other errors in the trial, and because the evidence of guilt was overwhelming, I would hold that the error of not reading all

the instructions aloud did not affect Defendant's substantial rights.

B.  *Our Discretion*

Even if the error here is properly labeled "structural," we still must decide whether to exercise our discretion to order a new trial.  In *Johnson v. United States*, 520 U.S. 461, 468–69 (1997), the defendant argued that an error affected her substantial rights because the error was "structural."  The Supreme Court expressly declined to decide whether the error was structural because, even if the error were structural, "it [would] not meet the final requirement of *Olano*."  *Id.* at 469.  It was clear that the error did not affect the jury's verdict, so there was "no basis for concluding that the error seriously affected the fairness, integrity or public reputation of judicial proceedings."  *Id.* at 470 (internal quotation marks and brackets omitted); *see United States v. Cotton*, 535 U.S. 625, 632–33 (2002) (applying the same methodology of declining to decide whether an error was structural because the error did not meet the fourth prong of plain-error review); *see also United States v. Promise*, 255 F.3d 150, 161 (4th Cir. 2001) (en banc) (holding that, under *Johnson*, a reviewing court may decline, under the fourth prong of plain-error review, to reverse even a structural error).

The same reasoning applies here.  Even if the instructional error here is properly labeled "structural," the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings because it had no conceivable effect on the jury's verdict.  Accordingly, I would affirm the judgment.