**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

BRETT DEPUE,
*Defendant-Appellant.*

No. 15-10553

D.C. No.
2:10-cr-00121-RLH-RJJ-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, Senior District Judge, Presiding

Submitted En Banc September 26, 2018*
Pasadena, California

Filed January 14, 2019

Before:  Sidney R. Thomas, Chief Judge, and William A. Fletcher, Richard A. Paez, Marsha S. Berzon, Milan D. Smith, Jr., Sandra S. Ikuta, Morgan Christen, Jacqueline H. Nguyen, Paul J. Watford, Andrew D. Hurwitz and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Berzon

---

* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Criminal Law

Affirming a conviction and sentence, the en banc court reaffirmed the distinction between waiver and forfeiture of sentencing challenges: a defendant waives his rights and precludes plain error review only when there is evidence that he knew of his rights at the time and nonetheless relinquished them.

Affirming the conviction, the en banc court adopted the three-judge panel's decision that the district court did not abuse its discretion when it dismissed a juror who complained of health problems during deliberations.

The en banc court held that the defendant forfeited— rather than waived—his challenge to the Sentencing Guidelines calculation because nothing in the district court record suggests that the defendant considered objecting to the calculation method or to any of the alleged factual inaccuracies he now raises. The en banc court explained that the fact the defendant knew generally that he could object if he recognized a mistake, or that he recognized and raised other errors, does not mean that he waived the right to challenge the specific alleged errors he raises on appeal.

Because the defendant forfeited rather than waived his challenge to the district court's Guidelines calculation, the en banc court evaluated whether the calculation was plain

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

error affecting substantial rights.  The en banc court held that regardless of whether the district court's loss calculation method was legally erroneous, the defendant has not met his burden to show that the alleged error affected his substantial rights.  As to the defendant's factual disputes underlying the Guidelines calculation, the en banc court was not convinced that the district court's factual errors, if any, were so egregious as to be plainly erroneous.

## COUNSEL

Mario D. Valencia, Henderson, Nevada, for Defendant-Appellant.

Adam Flake, Assistant United States Attorney; Elizabeth O. White, Appellate Chief; Steven W. Myhre, Acting United States Attorney; United States Attorney's Office, Las Vegas, Nevada; for Plaintiff-Appellee.

Vincent J. Brunkow and Michael A. Marks, Federal Defenders of San Diego Inc., San Diego, California, for Amici Curiae Ninth Circuit Federal Public and Community Defenders.

Lee H. Rubin and Donald M. Falk, Mayer Brown LLP, Palo Alto, California, for Amicus Curiae National Association of Criminal Defense Lawyers.

# OPINION

BERZON, Circuit Judge:

This appeal is, as Yogi Berra did or did not say, déjà vu all over again.[1] We are asked to explain when a defendant is entitled to plain error review of challenges to his sentence that he failed to raise in the district court. Our cases have consistently held that a defendant waives his rights and precludes plain error review only when there is evidence that he knew of his rights at the time and nonetheless relinquished them. Twenty-one years ago, we explained this point in an en banc opinion. *United States v. Perez*, 116 F.3d 840 (9th Cir. 1997) (en banc). We reaffirm today this distinction between waiver and forfeiture.

Depue challenges (1) the dismissal of a juror who complained of health problems during deliberations, and (2) the district court's sentencing range calculations under the United States Sentencing Guidelines ("Guidelines"). We adopt the three-judge panel's decision that the district court did not abuse its discretion when it dismissed the juror, as well as the panel's reasoning on that issue. *See United States v. Depue*, 879 F.3d 1021, 1027–28 (9th Cir. 2018). Confining our en banc consideration to Depue's challenge to the Guidelines calculations, we hold that Depue's failure to object to the Guidelines calculations at sentencing constitutes forfeiture subject to plain error review, but that there was no plain error.

---

[1] Victor Mather & Katie Rogers, *Behind the Yogi-isms: Those Said and Unsaid*, N.Y. Times (Sept. 23, 2015), https://www.nytimes.com/20 15/09/24/sports/yogi-berra-yogi-isms-quotes-explored.html.

## I

We recite the facts as pertinent to the issue addressed in this opinion.

From February 2005 to May 2007, Brett Depue ("Depue") conspired to orchestrate a large-scale mortgage fraud scheme. The conspiracy involved recruiting individuals with high credit scores to act as straw buyers of residential properties in Nevada. The straw buyers allowed Depue to use their names and good credit to buy properties with 100% financing. In exchange, they received approximately $5,000 for each property purchased in their name and the expectation of a good return on their "investment" in the property. To secure the financing, Depue and his co-conspirators prepared mortgage loan applications containing false and fraudulent information about the borrowers' employment, income, assets and intent to occupy the property as a primary residence.

Depue and his co-conspirators employed several methods to orchestrate their fraud. At first, Depue profited from third party disbursements.[2] This scheme involved using the identities of straw buyers to purchase properties with 100% financing at above the asking price, and disbursing the difference to one of the several business entities Depue operated. Depue also employed double escrows to further his conspiracy. This method involved purchasing a property at or below the asking price and immediately reselling it to a

---

[2] A third party disbursement occurs when, at the closing of a mortgage loan, money is issued to a person or entity other than those typically entitled to it, as are the seller, realtor, mortgage company, mortgage broker, lender, and the title and escrow company.

straw buyer at an inflated price.[3] The straw buyer's purchase was financed through a fraudulently obtained mortgage. Depue and his co-conspirators profited from the price difference.

In 2010, the government indicted Depue on eleven counts of wire fraud and aiding and abetting in violation of 18 U.S.C. §§ 2, 1343, and one count of conspiracy to commit bank fraud, mail fraud, and wire fraud in violation of 18 U.S.C. § 1349. The government dismissed four of the wire fraud charges before the end of Depue's first trial, and a mistrial was declared on the remaining eight charges due to a hung jury.

In 2012, Depue proceeded pro se in his second trial. A jury found him guilty on all eight counts. Depue then appealed his conviction to this court. We held that Depue's waiver of his right to counsel had not been sufficiently knowing and intelligent, and so vacated Depue's convictions and remanded for a new trial. *United States v. Depue*, 595 F. App'x 732, 734 (9th Cir. 2015).

Depue again proceeded pro se in his third trial, held in July 2015. He called no witnesses and made no opening or closing statements. Depue did not challenge the government's evidence or question its witnesses. Again, he was convicted on all eight counts.

Under the Guidelines, the recommended sentencing range for a convicted defendant is a function of the defendant's total offense level and criminal history category.

---

[3] At first, the initial purchase of the property was funded by a hard money lender who would be repaid after Depue resold the property. Later, Depue eliminated the need for a hard money lender by conducting the purchasing and reselling of the property at the same time.

The sentencing court calculates a defendant's total offense level by identifying the base offense level and increasing that offense level based on specific characteristics of the offense. U.S.S.G. § 2B1.1. For certain economic offenses, including those for which Depue was convicted, the offense level is increased from the base offense level based on the amount of economic loss resulting from the offense. U.S.S.G. § 2B1.1(b)(1).

Prior to Depue's sentencing hearing, the government filed a Sentencing Memorandum, which calculated Depue's total offense level as 39. The calculation was based largely on a determination that Depue's offenses resulted in a loss greater than $25 million. For losses between $25 and $65 million, the Guidelines instruct the court to add 22 offense levels to the base offense level. U.S.S.G. § 2B1.1(b)(1)(L).

To arrive at the loss figure, the government submitted evidence that, as part of the mortgage fraud, Depue and his co-conspirators had purchased 106 properties at a total price of $55,070,000. The government asserted that because the vast majority of these properties were purchased with 100% financing, the total purchase price equaled the total amount that Depue and his co-conspirators borrowed from banks. The banks eventually foreclosed on the properties and sold them for a total of $29,581,950. The Sentencing Memorandum therefore calculated the total loss to the banks as the difference between the total purchase and sales prices: $25,488,050. The Sentencing Memorandum calculated Depue's criminal history category as I, and concluded that the Guidelines recommended sentencing range was 262–327 months.

At his sentencing hearing, Depue did not object to the Pre-Sentence Report's ("PSR") calculation method, which

was the same as the method used by the government in its Sentencing Memorandum. The trial judge asked Depue if there were any errors in the PSR. Depue mentioned only his qualms about the dates of incarceration reported in the PSR and stated, "Other than that, the rest of [the PSR] appeared to be correct." After clarifying his incarceration dates, Depue again stated, "everything else appears to be accurate." The trial judge gave Depue a second opportunity to "comment" at sentencing, but Depue did not do so.

After calculating the Guidelines range using the same method as in the PSR and Sentencing Memorandum, the district court sentenced Depue to concurrent terms of imprisonment: 262 months on Count One; 240 months, each, on Counts Two, Three, Four, Five, Six, Seven, and Ten. The district court also imposed restitution in the amount of $1,567,429.93; five years' supervised release; and an $800 assessment fee. Depue timely appealed.

On appeal before a three-judge panel, Depue challenged (1) the dismissal of Juror No. 9 during deliberations, who complained of health problems because he suspected that he had been poisoned by another juror; and (2) the district court's Guidelines sentencing range calculations. With respect to the Guidelines challenge, Depue argued that the district court employed the wrong calculation method by calculating the actual loss from the conspiracy based on the sales price of the properties rather than on the loan principals for the mortgages he and his co-conspirators fraudulently obtained. He also argued that certain properties should not be included in the loss calculation because they were double-counted, displayed mistaken sales prices, or were not part of the mortgage-fraud conspiracy.

The three-judge panel affirmed the district court, holding that it did not abuse its discretion in dismissing the juror and

that Depue affirmatively waived his right to challenge the alleged Guidelines errors. *Depue*, 879 F.3d at 1029. A majority of the active, non-recused judges of this court voted in favor of rehearing en banc. Having adopted the three-judge panel's decision and reasoning regarding the juror dismissal question, we consider Depue's Guidelines challenge anew.

## II

## A.

Depue argues that the district court made numerous errors in the calculation of the loss amount from his offenses, which resulted in a 22-level enhancement to his Guidelines sentencing range. Because Depue did not object to any alleged Guidelines errors during his trial or sentencing, we apply plain error review. *See United States v. Olano*, 507 U.S. 725, 731–35 (1993); *United States v. Hammons*, 558 F.3d 1100, 1103 (9th Cir. 2009); *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").[4]

---

[4] Depue argues that we are not limited to the plain error standard when the issue presented is a pure question of law. *See United States v. Torres*, 828 F.3d 1113, 1123 (9th Cir. 2016). *But see United States v. Yijun Zhou*, 838 F.3d 1007, 1015–17 (9th Cir. 2016) (Graber, J., concurring) (suggesting that the "pure question of law" exception to plain error review should be reconsidered). We need not address whether the "pure question of law" exception applies, or whether it should be reconsidered, as it is not pertinent here. Depue's argument that the district court used the wrong method to calculate the total loss amount is a mixed question of law and fact, not a pure question of law. He claims that the sales-price method was not a "reasonable estimate of the loss," U.S.S.G. § 2B1.1, cmt. 3(C), based on the loan information available in

The general requirements of plain error review are familiar enough. "Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights." *Hammons*, 558 F.3d at 1103 (internal quotation marks omitted) (quoting *United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005) (en banc)). If these conditions are met, the reviewing court has the discretion to grant relief so long as the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

As a threshold matter, to constitute "error" under the first requirement, a defendant's claim or objection must not be "intentionally relinquished or abandoned." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016). Otherwise, the defendant has affirmatively acquiesced to the district court's ruling, and the district court made no error, plain or otherwise. *See Olano*, 507 U.S. at 732–34. Thus, forfeited claims are reviewed for plain error, while waiver precludes appellate review altogether. We write to clarify this long-established distinction specifically in the sentencing context.

**B.**

The Supreme Court made clear a quarter-century ago that "[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a *known* right.'" *Id.* at 733 (emphasis added) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

---

this case. *See Yijun Zhou*, 838 F.3d at 1012 (majority opinion) (concluding that de novo review of a forfeited Guidelines challenge is not appropriate where "[d]efendant's argument requires that we apply the legal standard in the [statute] to the particular factual details in the record").

We elaborated on the knowledge requirement for waiver in *United States v. Perez*, 116 F.3d at 840. *Perez* held that a defendant forfeited, as opposed to waived, his right to appeal an erroneous jury instruction even though his attorney submitted the instructions at trial. *Id*. at 845–46. *Perez* so concluded because there was no "evidence in the record that the defendant was aware of . . . the relinquished or abandoned right." *Id*. at 845. Although defense counsel submitted the erroneous instructions, there was no indication that counsel knew what the correct instructions would have been and, "for some tactical or other reason," did not submit them. *Id*. *Perez* explained that waiver occurs when a defendant "considered the controlling law, . . . and, in spite of being aware of the applicable law," relinquished his right. *Id*.

Under *Perez*, a failure to object or an uninformed representation to the court is not alone sufficient evidence of waiver. Rather, there must be evidence that the defendant was aware of the right he was relinquishing and relinquished it anyway. *Id*. Absent such evidence, failure to preserve a claim constitutes forfeiture subject to plain error review.

Since *Perez*, we have routinely applied plain error review to sentencing determinations when defendants have failed to object to the district court's sentencing calculations—or even affirmatively endorsed them—as long as the actual evidence of knowing relinquishment required by *Perez* was absent. *See, e.g.*, *United States v. Alvirez*, 831 F.3d 1115, 1126 (9th Cir. 2016); *United States v. Gallegos-Galindo*, 704 F.3d 1269, 1272 (9th Cir. 2013); *Hammons*, 558 F.3d at 1103; *United States v. Waknine*, 543 F.3d 546, 551 (9th Cir. 2008); *United States v. Jimenez*, 258 F.3d 1120, 1123–24 (9th Cir. 2001). The critical question has been whether there was evidence indicating the

defendants knew of their rights and chose to relinquish them anyway.

For example, *United States v. Jimenez* held that a defendant who "confirmed the accuracy of the PSR" had forfeited, not waived, his right to appeal the district court's sentencing errors. 258 F.3d at 1124. Jimenez argued that the district court's reliance on the PSR was erroneous because the PSR did not specify the statute of conviction for his offense. *Id.* at 1125–26. We held that plain error review was available because "[t]here is no evidence that Jimenez knew of any requirement that the statute of conviction had to be cited in the PSR or that he considered objecting at the hearing, but 'for some tactical or other reason rejected the idea.'" *Id.* at 1124 (quoting *Perez*, 116 F.3d at 845); *see also United States v. Potter*, 895 F.2d 1231, 1238–39 & n.6 (9th Cir.1990) (reviewing challenge to PSR for plain error where defense counsel "agreed with the prosecutor and the court to proceed on the basis of the [PSR]" at sentencing).

This case is precisely parallel to *Jimenez*. Like the defendant in that case, Depue did not object to the accuracy of the PSR with respect to the alleged errors he now raises on appeal. Apart from mentioning that the PSR misstated his previous dates of incarceration, Depue stated that "the rest of [the PSR] appeared to be correct." Similarly, the record is devoid of any evidence that Depue knew of the errors he now asserts, much less that he intended to relinquish them.

Although Depue did object to the dates of incarceration in the PSR, his doing so is not evidence that he was aware of and considered objecting to other alleged errors, but "for some tactical or other reason, rejected the idea." *Perez*, 116 F.3d at 845. The relevant question is whether Depue knew the substantive legal rules underlying the *particular* challenges to the Guidelines calculation he raises on appeal,

and knew that the district court's calculation violated those rules. *See Jimenez*, 258 F.3d at 1124 ("There is no evidence that Jimenez knew of any requirement that the statute of conviction had to be cited in the PSR . . . ."); *Perez*, 116 F.3d at 845 ("[T]he record reveals that neither defendants, the government, nor the court was aware of *Mendoza*'s requirement that the 'in relation to' element be submitted to the jury." (citing *United States v. Mendoza*, 11 F.3d 126, 128 (9th Cir. 1993))). The evidence indicates he did not. Nothing in the record suggests that Depue considered objecting to the calculation method or to any of the alleged factual inaccuracies he raises now. The fact that Depue knew generally that he could object if he recognized a mistake, or that he recognized and raised other errors, does not mean that he waived the right to challenge the specific alleged errors he raises on appeal.

We therefore hold that Depue forfeited—rather than waived—his challenge to the sentencing calculation on appeal. In doing so, we underscore that the distinction between waiver and forfeiture is particularly important in the sentencing context. By requiring evidence that a waiver is knowing, and therefore permitting plain error review when such evidence is absent, we preserve our ability to review sentencing errors even if the parties were not diligent or knowledgeable enough to identify them during sentencing. The Sentencing Guidelines "are complex, and so there will be instances when a district court's sentencing of a defendant within the framework of an incorrect Guidelines range goes unnoticed." *Molina-Martinez*, 136 S. Ct. at 1342–43; *see also Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018). The risk is heightened where, as in this case, the defendant proceeds pro se. Although a district court will often ask whether the parties object to its Guidelines calculations, it "has the ultimate responsibility to ensure that

the Guidelines range it considers is correct." *Rosales-Mireles*, 138 S. Ct. at 1904. As the Supreme Court has explained, uncorrected Guidelines errors risk depriving defendants of liberty beyond what is necessary to serve the purposes of punishment. *See id*. at 1908. Such errors also undermine the United States Sentencing Commission's ("the Commission") ability to revise the Guidelines to ensure certainty and fairness in the sentencing process more broadly, because the Commission relies on data from individual sentencing proceedings to amend the Guidelines. *Id*. Attention to the distinction between forfeiture and waiver—which results in a distinction between plain error appellate review and no appellate review—is thus of special salience in the sentencing context.

## C.

Because we hold that Depue forfeited his challenge to the district court's Guidelines calculation, we evaluate whether the calculation was plain error affecting Depue's substantial rights. Fed. R. Crim. P. 52(b); *Hammons*, 558 F.3d at 1103. We conclude that, except for the absence of waiver, the plain error requirements are not met.

"An error is plain if it is 'contrary to the law at the time of appeal . . . .'" *Ameline*, 409 F.3d at 1078 (alteration in original) (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)). It affects substantial rights if the defendant can "demonstrate a reasonable probability that [he] would have received a different sentence if the district court had not erred." *United States v. Joseph*, 716 F.3d 1273, 1280 (9th Cir. 2013) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Tapia*, 665 F.3d 1059, 1061 (9th Cir. 2011)).

Depue's primary objection to the Guidelines calculation is that the district court erred by calculating the actual loss from the conspiracy based on the sales price of the purchased properties, rather than on the loan principals of the mortgages he and his co-conspirators fraudulently obtained. Regardless of whether the district court's loss calculation method was legally erroneous, Depue has not met his burden to show that the alleged error affected his substantial rights.

"When a defendant is sentenced under an incorrect Guidelines range . . . the error itself . . . most often will[] be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez*, 136 S. Ct. at 1345. But here, the evidence is insufficient to demonstrate that a different method would have generated a lower Guidelines range, and so does not show "a reasonable probability of a different outcome." *Id*.

According to the Guidelines, a 22-level enhancement is appropriate for fraud causing a loss between $25 million and $65 million. U.S.S.G. § 2B1.1(b)(1)(L). Based on evidence submitted by the government, the total loss as calculated using the sales price of the properties amounted to $25,488,050. Depue has only provided evidence that the allegedly erroneous calculation method resulted in over-counting the loss on one property by $20,250, far less than what he must show to demonstrate that the 22-level enhancement is incorrect. He has not shown that the calculation method resulted in over-counting the loss on other properties; any possibility that it did so is speculative. *See Jones v. United States*, 527 U.S. 373, 394–95 (1999) ("Where the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights.").

In fact, Depue seems to recognize that a loan-principal calculation method would not yield a significantly different calculation. He acknowledges that the "vast majority" of the properties involved in the scheme were purchased with 100% financing, and so the principal amount of the loan would be approximately equal to the sales price.

Depue's remaining claims amount to factual disputes underlying the Guidelines calculation. He argues that certain properties should not be included in the loss calculation because they were double-counted, displayed mistaken sales prices, or were not part of the mortgage-fraud conspiracy. Unless extreme, "an error that hinges on a factual dispute is not 'obvious' as required by the 'plain error' standard." *Yijun Zhou*, 838 F.3d at 1011; *see also United States v. Scrivner*, 114 F.3d 964, 968–70 (9th Cir. 1997). We are not convinced that the district court's factual errors, if any, were so egregious as to be plainly erroneous.

## III

Because the record does not indicate that Depue knowingly relinquished his right to appeal the alleged Guidelines errors, we apply plain error review to his forfeited claims. However, Depue has not demonstrated that the district court committed plain error affecting his substantial rights. We therefore affirm Depue's conviction and sentence.

**AFFIRMED.**