**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-3634 |
| *Plaintiff - Appellee*, | D.C. No. 1:21-cr-02029-SAB-1 |
| v. | |
| SAMANTHA MARIE TAINEWASHER, AKA Samantha Marie Howard, | OPINION |
| *Defendant - Appellant*. | |

Appeal from the United States District Court
for the Eastern District of Washington
Stanley Allen Bastian, District Judge, Presiding

Argued and Submitted August 15, 2025
Anchorage, Alaska

Filed October 10, 2025

Before: Susan P. Graber, John B. Owens, and Ryan D. Nelson, Circuit Judges.

Per Curiam Opinion;
Dissent by Judge Graber

# SUMMARY[*]

## Criminal Law

The panel affirmed Samantha Marie Tainewasher's conviction for illegal use of a communication facility in the commission of a drug felony in violation of 21 U.S.C. § 843(b).

Tainewasher contended that the district court plainly erred by failing to instruct the jury that, to convict her of facilitation, it must find that the underlying drug felony was actually committed. Assuming the district court's instruction was obvious error by not requiring that finding, the panel concluded it did not affect Tainewasher's substantial rights, as there was no reasonable probability that it affected the outcome of the district court proceedings, where Tainewasher's Facebook messages clearly indicate that a drug felony was committed, and the defense did not dispute the underlying evidence nor ask the jury to acquit her of the communication-facility charge at trial.

Tainewasher also argued that the district court plainly erred by failing to give the jury a specific unanimity instruction regarding the drug felony she allegedly facilitated. Given the simplicity of the evidence, argument, and instructions related to the communication-facility charge, the panel concluded that Tainewasher failed to show that any error affected her substantial rights.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel affirmed Tainewasher's involuntary manslaughter conviction in a concurrently filed memorandum disposition.

Judge Graber dissented from the opinion. Disagreeing with the opinion's conclusion that Tainewasher failed to show a reasonable likelihood of a different outcome, she wrote that in light of the incredibly flimsy evidence submitted by the government, a jury that was properly instructed—that the government must prove that an underlying drug offense occurred—would almost certainly harbor a reasonable doubt as to whether a completed drug offense occurred. She also wrote that by choosing merely to assume the first two prongs of the plain-error test, the opinion fails to clarify and correct Ninth Circuit law on important legal issues as to which precedential guidance is needed.

## COUNSEL

Michael J. Ellis (argued) and Timothy J. Ohms, Assistant United States Attorneys; Richard R. Barker, Acting United States Attorney; Office of the United States Attorney, United States Department of Justice, Spokane, Washington; for Plaintiff-Appellee.

W. Miles Pope (argued), Goddard Pope PLLC, Boise, Idaho, for Defendant-Appellant.

**OPINION**

PER CURIAM:

Samantha Marie Tainewasher appeals from her conviction for illegal use of a communication facility in the commission of a drug felony in violation of 21 U.S.C. § 843(b).  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.  BACKGROUND

Via Facebook, Tainewasher chatted with customers about selling controlled substances.  For example, on April 23, 2020, Tainewasher received a Facebook message from "Trigger Tre" stating, "I really need em ill get em off yu fasure," and asking, "Do yu have em or not[?]"  Tainewasher replied, "No I don't . . . I was selling them for someone I will have more later."   A few days later, on April 29, 2020, Tainewasher messaged Trigger Tre that she "got pills."  Trigger Tre replied, "Rn?" (meaning right now), to which Tainewasher replied, "Yea."

On April 27, 2020, Tainewasher received a message from another individual asking if she "ha[d] any blk" (a term for heroin).  She replied that she could "get you some," which she would "[t]rade for shards" (a term for methamphetamine). On April 28, 2020, Tainewasher wrote back that, "I have dark" (a term for heroin), and the two messaged about the logistics of a meet-up.

And on June 9, 2020, Tainewasher received a message from yet another individual, who asked, "U know where I could get a ball of shards[?]" (a term for 3.5 grams of methamphetamine).  Tainewasher replied, "Yea I'll have it

in a bit." Approximately one hour later, Tainewasher responded, "I have it," and "[o]n my way."

A grand jury charged Tainewasher with (1) using a communication facility in the commission of a drug felony in violation of 21 U.S.C. § 843(b), (d)(1)–(2); and (2) involuntary manslaughter in violation of 18 U.S.C. §§ 1112, 1153 for her child's fentanyl overdose.

The trial focused primarily on her child's death.[1] After the close of evidence, which included the text messages quoted *supra* and narcotics evidence from her home, the trial court instructed the jury that they could convict Tainewasher if the government proved:

> That on or about between April 23, 2020, and June 9, 2020, in the Eastern District of Washington, the defendant knowingly or intentionally used a communication facility, Facebook Messenger, to facilitate the possession with intent to distribute, distribution of, and attempted distribution of . . . fentanyl and/or . . . heroin and/or . . . methamphetamine.

The jury instruction did not require the prosecution to prove the actual commission of the underlying crime facilitated by the defendant's communication, as other courts have required.[2] The defense never objected to this instruction,

---

[1] We affirm Tainewasher's involuntary manslaughter conviction in a concurrently filed memorandum disposition.

[2] *See United States v. Powell*, 469 U.S. 57, 60 n.4 (1984) ("The lower courts seem to agree that the Government must prove, as an element of a § 843(b) offense, the commission of the felony the accused is charged

and the jury returned a guilty verdict on both counts after less than two hours of deliberation. The trial court sentenced Tainewasher to time served and three years' supervised release. Tainewasher timely appealed.

## II. DISCUSSION

### A. Plain Error

When a defendant raises an issue for the first time on appeal, we may review only for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Nobari*, 574 F.3d 1065, 1080 (9th Cir. 2009); *United States v. Olano*, 507 U.S. 725, 730–36 (1993). The plain error standard "demand[s] strenuous exertion to get relief for unpreserved error." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004). The defendant bears the burden of showing plain error. *Id.*; *see also United States v. Vonn*, 535 U.S. 55, 63 (2002).

The plain error doctrine seeks to prevent a miscarriage of justice or preserve the integrity and the reputation of the judicial process. *See Olano*, 507 U.S. at 736; *see also United States v. Lopez*, 4 F.4th 706, 719 (9th Cir. 2021). Under the plain error standard, a defendant is not entitled to relief unless there has been (1) error, (2) that was plain, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial

---

with facilitating." (tracking cases from the Tenth and Eleventh Circuits) (reversing the Ninth Circuit on other grounds)); *see also United States v. Wheat*, 988 F.3d 299, 312–13 (6th Cir. 2021) (also interpreting § 843(b) to require the government to prove the commission of the underlying offense); *United States v. Castro-Avalos*, 105 F. App'x 205, 206 (9th Cir. 2004) (unpublished) ("[T]he commission of the facilitated offense is 'a fact necessary to constitute the crime' of facilitation under § 843(b)" (citation omitted)).

proceedings.  *See United States v. Depue*, 912 F.3d 1227, 1232 (9th Cir. 2019) (en banc).

### B. Any Instructional Error Did Not Affect Tainewasher's Substantial Rights

Tainewasher raises two challenges to the district court's communication facility instruction.  Because her trial counsel never objected to this instruction, the parties agree that we review for plain error.

Citing cases like *United States v. Powell*, 469 U.S. 57, 60 n.4 (1984), Tainewasher first contends that the district court plainly erred by failing to instruct the jury that, to convict her of facilitation, it must find that the underlying drug felony was actually committed.  Assuming the district court's instruction was obvious error by not requiring that finding, we conclude it did not "affect [Tainewasher's] substantial rights, meaning . . . there was [no] reasonable probability that it affected the outcome of the district court proceedings."  *United States v. Conti*, 804 F.3d 977, 981 (9th Cir. 2015) (internal quotation marks and citation omitted). Tainewasher's Facebook messages clearly indicate that a drug felony was committed, and the defense did not dispute the underlying evidence nor ask the jury to acquit her of the communication-facility charge at trial.  *See id*. at 982 (considering "whether the defendant contested the omitted element and 'raised evidence sufficient to support a contrary finding'" to hold that instructional error did not affect substantial rights (citation omitted)); *cf. United States v. Cotton*, 535 U.S. 625, 633 (2002) (affirming despite plain error in indictment because evidence of omitted fact was "overwhelming and essentially uncontroverted" (citation and internal quotation marks omitted)).

Tainewasher also argues that the district court plainly erred by failing to give the jury a specific unanimity instruction regarding the drug felony she allegedly facilitated. "[A] specific unanimity instruction is required if there is a genuine possibility of jury confusion or a possibility that a conviction may occur as the result of different jurors concluding that the defendant committed different acts." *United States v. Lapier*, 796 F.3d 1090, 1096 (9th Cir. 2015) (citation and internal quotation marks omitted). Courts look at the text of the indictment, the clarity of the government's argument, the complexity of the evidence, and the intelligibility of the jury instructions to assess the "risk that different jurors voted to convict on the basis of different facts establishing different offenses." *Id.* at 1097. Given the simplicity of the evidence, argument, and instructions related to the communication-facility charge in this case, Tainewasher fails to show that any error affected her substantial rights. *See Conti*, 804 F.3d at 981–82.

**AFFIRMED**.

---

GRABER, Circuit Judge, dissenting from the opinion:

I respectfully dissent from the opinion.[1]

In order to prove that Defendant was guilty of violating 21 U.S.C. § 843(b), which criminalizes the use of a "communication facility in committing or in causing or facilitating the commission" of a drug felony, the government must prove that an underlying drug offense

---

[1] I concur in the separate disposition, which affirms Defendant's manslaughter conviction.

occurred.  The jury's instructions here did not require that finding, instead allowing the jury to convict Defendant even if no drug offense occurred.  The opinion nevertheless affirms on the ground that Defendant failed to show a reasonable likelihood of a different outcome.  I strongly disagree with that conclusion.  The government submitted nothing more than a few informal, jargon-filled Facebook chat messages:  no drug evidence, no witness testimony, no tracking information—nothing other than the messages quoted in the opinion.  In light of that incredibly flimsy evidence, a properly instructed jury almost certainly would harbor a reasonable doubt as to whether a completed drug offense in fact occurred.

Additionally, the opinion has chosen merely to assume the first two prongs of the plain-error test.  By doing so, the opinion fails to clarify and correct Ninth Circuit law on important legal issues that arise often.  Parties in future cases, the district courts, and we deserve precedential guidance.  Either in this case or in a future appropriate case, we should convene en banc in order to provide that guidance.

A.  The Instruction and Our Standard of Review.

The facilitation statute provides:

> It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts

> constituting a felony under any provision of
> this subchapter or subchapter II.

21 U.S.C. § 843(b). The district court instructed the jury that, to convict, it must find beyond a reasonable doubt:

> That on or about between April 23, 2020,
> and June 9, 2020, in the Eastern District of
> Washington, the defendant knowingly or
> intentionally used a communication facility,
> Facebook Messenger, to facilitate the
> possession with intent to distribute,
> distribution of, and attempted distribution of
> a mixture or substance containing a
> detectable amount of fentanyl and/or a
> mixture or substance containing a detectable
> amount of heroin and/or a mixture or
> substance containing a detectable amount of
> methamphetamine.

That instruction did not require the jury to find that an underlying drug offense was committed.[2] Defendant did not object, so we review for plain error. United States v. Nobari, 574 F.3d 1065, 1080 (9th Cir. 2009); Fed. R. Crim. P. 52(b). "Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Depue, 912 F.3d 1227, 1232 (9th Cir. 2019) (en banc) (citations and internal quotation marks omitted); see generally United States v. Olano, 507 U.S. 725, 734–35 (1993). If those elements are met, we may reverse if the error seriously affected the

---

[2] The omission of this element was no accident. Both the government's lawyer and the district court concluded that the statute did not require proof of a completed drug offense.

fairness, integrity, or public reputation of judicial proceedings. Depue, 912 F.3d at 1232.

B. The Instruction Was Erroneous.

The statutory text is clear that an underlying drug offense must have been committed. See 21 U.S.C. § 843(b) ("It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II." (emphasis added)). One cannot facilitate the commission of a crime if no crime occurred. No fewer than eight circuit courts have so held in unmistakable terms in published opinions. See United States v. Wheat, 988 F.3d 299, 312 (6th Cir. 2021) ("Section 843(b)'s text requires . . . that the defendant or another person actually committed the underlying drug felony that serves as the basis for the communication-facility charge."); United States v. Wilbourn, 799 F.3d 900, 910 (7th Cir. 2015) ("Proof of an underlying narcotics offense is an element under § 843(b) and must be proven beyond a reasonable doubt."); United States v. Orihuela, 320 F.3d 1302, 1304 (10th Cir. 2003) (per curiam) ("[O]ne of the elements of an offense under § 843(b) is the commission by someone of an underlying controlled substance offense."); United States v. Escobar-de Jesus, 187 F.3d 148, 163 (1st Cir. 1999) ("[T]o obtain a conviction on a charge of telephone facilitation pursuant to section 843, the government must prove commission of the underlying offense."); United States v. Mankins, 135 F.3d 946, 949 (5th Cir. 1998) ("A conviction under § 843(b) requires . . . proof of the underlying drug offense that the defendant is accused of facilitating, even though it is not separately charged."); United States v. Iennaco, 893 F.2d 394, 396 (D.C. Cir. 1990) ("[T]o obtain a

conviction on a charge of telephone facilitation, the government must prove actual commission (by the defendant or another person) of the alleged underlying offense."); United States v. Johnstone, 856 F.2d 539, 543 (3d Cir. 1988) ("The occurrence of the underlying drug felony is a fact necessary to finding a violation of § 843(b)."); United States v. Mims, 812 F.2d 1068, 1077 (8th Cir. 1987) ("The elements of proof of a § 843(b) telephone count [include] . . . [p]roof of the underlying offense."). No published case is to the contrary.

In addition, one of our decisions implicitly decided the issue. In United States v. Powell, 708 F.2d 455 (9th Cir. 1983), a jury convicted the defendant of three counts under § 843(b) but acquitted her of the underlying drug offenses. Id. at 456. We reversed the convictions, under then-applicable law, because those findings by the jury were internally inconsistent. Id. That holding made sense only if the statute required proof of the underlying drug offenses. The Supreme Court reversed our decision, holding that we had misapplied the "inconsistent verdicts" rule (inconsistency now does not result in reversal). United States v. Powell, 469 U.S. 57 (1984). But the Court did not disturb our implicit holding that § 843(b) requires proof of the underlying drug offense. To the contrary, the Court cited cases from two other circuits and stated: "The lower courts seem to agree that the Government must prove, as an element of a § 843(b) offense, the commission of the felony that the accused is charged with facilitating." Id. at 60 n.4. The Court premised its analysis on that assumption.

As a formal matter, the Supreme Court's statement, and our implicit holding, may not bind us. But we should expressly join the other circuits and make explicit what was implicit in Powell: a conviction on a charge of facilitation

under § 843(b) requires proof of the underlying drug offense that the defendant is charged with facilitating, whether or not that underlying offense is charged separately. The district court erred by omitting that required predicate.

C. The Error Was Plain.

To qualify as plain, "the legal error must be clear or obvious, rather than subject to reasonable dispute." Puckett v. United States, 556 U.S. 129, 135 (2009). We assess plainness at the time of appeal, not the time of the error. Henderson v. United States, 568 U.S. 266, 279 (2013).

1. We Consider All Legal Sources in Assessing Plain Error.

If a controlling precedent by the Supreme Court or by us is on point, then the error is plain. United States v. Ameline, 409 F.3d 1073, 1078 (9th Cir. 2006) (en banc). But—contrary to the government's argument here—we do not stop our analysis if no binding precedent is on point. Instead, we look to other considerations to determine whether the issue is "subject to reasonable dispute." Puckett, 556 U.S. at 135. "We must consider whether the available authorities provide a clear answer to the question before us." United States v. Thompson, 82 F.3d 849, 855 (9th Cir. 1996).

For example, in Thompson, we noted that "[t]here is no controlling Supreme Court precedent" and that "[o]ur court ha[d] not addressed" the relevant evidentiary issue. Id. at 855. But we did not stop there. We continued our analysis, assessing whether decisions by other circuits provided a clear consensus on the issue. Id. We held that any error was not plain "[b]ecause of the circuit split, the lack of controlling authority, and the fact that there is at least some

room for doubt about the outcome of this issue." Id. at 856 (footnote omitted).

Several years later, in United States v. Kyle, 734 F.3d 956 (9th Cir. 2013), we assessed whether a district judge's involvement in plea negotiations was erroneous and whether any error was plain. Id. at 963–66. We first distinguished one of our own precedents, United States v. Frank, 36 F.3d 898 (9th Cir.1994), in which we had held that no reversible error occurred. Kyle, 734 F.3d at 964. We then looked to "[t]wo cases from our sister circuits"—United States v. Crowell, 60 F.3d 199 (5th Cir. 1995), and United States v. Kraus, 137 F.3d 447 (7th Cir. 1998) —which, in our view, "were decided on facts more similar to" the facts at issue in Kyle. Kyle, 734 F.3d at 965. We concluded that, "**[t]ogether**, Frank, Crowell, and Kraus" illustrated the relevant legal principle that the district judge had violated. Id. (bold emphasis added). We held that the error was plain on the theory that an error can be plain "even though there was no directly controlling authority, where 'a confluence of sister circuits have answered the question' and the circuit 'has addressed closely related issues.'" Id. at 966 (quoting United States v. Hope, 545 F.3d 293, 297 (5th Cir.2008)) (brackets and ellipsis omitted).

In short, in assessing whether an error is "plain," we must consider the views of other circuits even if no binding precedent is on point. Our objective is to determine whether the issue at hand is "subject to reasonable dispute," Puckett, 556 U.S. at 135, not to determine simply whether the issue is controlled by binding precedent. And, as the cases above illustrate, how other circuits have decided the issue can inform our analysis as to the existence—or not—of a reasonable dispute.

This approach to plain-error review comports with how we determine clarity in other contexts. For example, when analyzing petitions for mandamus, we look for the presence of "clear error." In re Mersho, 6 F.4th 891, 898 (9th Cir. 2021). We have held that a ruling is not clearly erroneous if there is no prior Ninth Circuit authority "or where the issue in question has not yet been addressed by any circuit court in a published opinion." In re Grice, 974 F.3d 950, 955 (9th Cir. 2020). Similarly, in the context of qualified immunity, we ask whether a defendant violated "clearly established" law. Shooter v. Arizona, 4 F.4th 955, 961 (9th Cir. 2021). Even in the "absence of 'binding precedent,' we 'may look to decisions from the other circuits' to determine whether they reflect a 'consensus of courts' that can be said to clearly establish the relevant law.'" Id. at 963 (quoting Martinez v. City of Clovis, 943 F.3d 1260, 1276 (9th Cir. 2019)).

This approach to plain-error review also comports with how at least seven other circuits analyze the question of plain error. See United States v. Romero, 132 F.4th 1208, 1218 (10th Cir. 2025) ("An error is plain if it is clear or obvious under current, well-settled law, in that there is precedent directly on point from the Supreme Court or the Tenth Circuit, or there is a consensus in the other circuits." (citation and internal quotation marks omitted)), petition for cert. filed, No. 24-7520 (U.S. June 24, 2025); United States v. Scott, 14 F.4th 190, 198 (3d Cir. 2021) ("[T]he lack of in-circuit case law on the specific question does not doom a finding of plain error, where there are out-of-circuit decisions sufficiently on-point. It is sufficient that the great weight of persuasive authority supports a contrary result." (cleaned up)); United States v. Green, 996 F.3d 176, 185 (4th Cir. 2021) ("[I]t is possible for a district court to commit plain error even where, as here, there is no controlling

authority from the Supreme Court or Fourth Circuit. And this is precisely [such a case]: one in which 'our sister circuits have uniformly taken a position on an issue that has never been squarely presented to this Court.'" (citations omitted)); United States v. Vasquez, 899 F.3d 363, 379 (5th Cir. 2018) ("Of course, a robust consensus among the courts of appeals can support a finding of plain error."); United States v. Seals, 813 F.3d 1038, 1047–48 (7th Cir. 2016) ("The government is quick to point out that we 'rarely find plain error on a matter of first impression' since such matters are 'unlikely to be that obvious' even when 'other circuits have addressed this issue.' But the fact that this court 'rarely' finds plain error in such instances does not mean that such a conclusion is never warranted. And the circumstances of this case [including 'widespread agreement among our sister circuits'] justify deviating from the general rule." (ellipsis omitted)); United States v. Brown, 352 F.3d 654, 664 (2d Cir. 2003) ("[I]t is not always necessary for the party alleging plain error to cite a circuit or Supreme Court precedent precisely on point. Plain error review is considerably more flexible."); United States v. Smith, 232 F.3d 236, 242 (D.C. Cir. 2000) (holding that, although "this circuit has not yet addressed [a specific legal issue,] . . . this fact, alone, is not dispositive of the plain error issue," and considering, among other factors, the rulings by "our sister circuits").

I acknowledge that a few decisions by some circuit courts suggest that binding precedent is required for an error to be plain. United States v. Grullon, 996 F.3d 21, 32–33 (1st Cir. 2021); United States v. Ruzicka, 988 F.3d 997, 1009 (8th Cir. 2021); United States v. Al-Maliki, 787 F.3d 784, 794 (6th Cir. 2015); United States v. Lejarde–Rada, 319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam). But other

decisions by those same circuits suggest a broader rule, consistent with the way most circuits assess plain error, which includes looking to decisions by other circuits. See, e.g., United States v. Bobal, 981 F.3d 971, 975 (11th Cir. 2020) ("An error cannot be plain if neither the Supreme Court nor this Court has ever resolved the issue, and other circuits are split on it." (emphasis added) (brackets and internal quotation marks omitted)); United States v. Merritt, 934 F.3d 809, 811–12 (8th Cir. 2019) (considering, after concluding that no binding precedent exists and before concluding that no plain error occurred, what other circuits have ruled); United States v. Valdivia, 680 F.3d 33, 42 (1st Cir. 2012) (looking to whether there is a "consensus among the circuits on the issue" and citing other First Circuit cases that have considered the views of other circuits in assessing plain error); United States v. Lanham, 617 F.3d 873, 884 (6th Cir. 2010) (rejecting a finding of plain error because of a circuit split on the issue). Moreover, I have found no decision—in any circuit—holding that an error was not plain in the face of uniform decisions by other circuits establishing an error. In sum, we must look to all available sources and ask whether the pertinent issue is "subject to reasonable dispute." Puckett, 556 U.S. at 135.

## 2. The Error Here Was Plain.

Four considerations, taken together, demonstrate that the error here was plain, that is, that the issue is not subject to reasonable dispute. First, as described above, eight other circuits easily concluded that the statute requires proof of a completed crime. Those decisions amount to what the Fifth Circuit calls a "robust consensus" allowing that court, and others, to find plain error. Vasquez, 899 F.3d at 379. Second, in Powell, 708 F.2d 455, we thought that the requirement of a completed crime was so obvious that we

based our opinion on the requirement without even considering it necessary to explain why. Third, and relatedly, the text and logic of the statute reasonably allow only one interpretation: Congress could not have intended to impose criminal liability for helping to bring about actions falling short of a completed crime. See United States v. Irons, 31 F.4th 702, 713 (9th Cir. 2022) (holding that an error was plain, even though no binding precedent was on point, because "our textual analysis is sufficiently one-sided, and sufficiently dictates the answer, that the district court's error is 'plain'"). Fourth, the government here does not advance—just as the government in Powell apparently did not advance—any argument to the contrary. Nor can I perceive a reasonable argument to the contrary. Considering all of those reasons, I conclude that the error here was plain.

3.   We Should Discontinue an Outdated Formulation of the Test.

In some cases, including United States v. Turman, 122 F.3d 1167 (9th Cir. 1997), we described plain error as "error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." Id. at 1170. In Henderson, 568 U.S. at 279, the Supreme Court expressly rejected that formulation. Questioning whether the district judge should have caught the error asks the question at the wrong time—at the time of the error rather than at the time of appeal. Id. Moreover, as the Court explained, the purpose of Rule 52(b) of the Federal Rules of Criminal Procedure has nothing to do with measuring the competency of district judges: "[P]lain-error review is not a grading system for trial judges. It has broader purposes, including in part allowing courts of appeals better to identify those instances in which the application of a new rule of law to cases on appeal will meet the demands of fairness and

judicial integrity." Id. at 278. Rule 52(b) seeks a fair and just result, striking a balance between, on the one hand, the ordinary judicial-efficiency principle that arguments not raised initially may not be raised on appeal and, on the other hand, the liberty interests of a criminal defendant.

Our old formulation of the test, as well as its variants, is thus doubly wrong: asking a question about the wrong time (at the time of trial rather than at the time of appeal) and about the wrong subject matter (the district judge's perspicacity rather than the obviousness of the error). Regrettably, some of our cases have continued to use such formulations even after Henderson. E.g., United States v. Hackett, 123 F.4th 1005, 1011–12 (9th Cir. 2024); United States v. Rusnak, 981 F.3d 697, 705 (9th Cir. 2020); United States v. Bain, 925 F.3d 1172, 1178 (9th Cir. 2019). The en banc court should overrule our continued application of the antiquated formulation that the Supreme Court expressly rejected. The proper inquiry is simply whether, at the time of appeal, an error is "clear" or instead is "subject to reasonable dispute." Puckett, 556 U.S. at 135.

### D. The Instructional Error Was Prejudicial.

The instructional error likely affected the outcome of the proceeding. See Olano, 507 U.S. at 734–36 (stating this criterion). The evidence that a completed drug offense occurred was extremely weak.[3] There was no evidence of drugs or cash at the pertinent time;[4] there was no testimony

---

[3] Recall that the prosecutor insisted, and the district court agreed, that the government need not prove that a completed drug offense occurred. See supra note 2.

[4] The record contains evidence of small amounts of drugs located in Defendant's home around the time of the toddler's death. But the Facebook messages were sent one to three months later. No evidence

by a witness or a police officer; there was no evidence tracking Defendant's vehicle; there was no surveillance video; there was no confession and no testimony by Defendant or any of the people who sent messages on Facebook. The <u>only</u> evidence is a short series of often-cryptic messages, sent via Facebook, one to three months after the death of the toddler. A reasonable, properly instructed jury almost certainly would conclude that the government failed to carry its burden to prove a completed crime beyond a reasonable doubt.

Moreover, the lack of a unanimity instruction exacerbated the main instructional error. Even assuming that some jurors might have concluded that Defendant committed an underlying drug offense, they might not have agreed on which conduct and which offense among the three prosecution theories (distribution of drugs, attempted distribution of drugs, and possession with intent to distribute drugs). Indeed, neither the government nor the opinion identifies <u>which completed drug offense</u> occurred. And neither the government nor the opinion identifies <u>which Facebook messages</u> were so overwhelmingly convincing that a reasonable jury necessarily would have found Defendant guilty beyond a reasonable doubt.

Notably, even if one credits the opinion's interpretation of the messages and takes those interpretations at face value, none of the messages shows a drug transaction actually occurring. That is, no distribution of drugs is shown. Nor do the messages show that Defendant took enough actions to

---

suggests that the drugs involved in the toddler's death also were involved in the purported later crimes. The opinion's oblique reference to "narcotics evidence from [Defendant's] home" is misleading in this regard. Op. at 5.

constitute a criminal attempt at distribution. Finally, the messages themselves cannot be said to aid in Defendant's purported possession with intent to distribute; she obtained drugs (if, in fact, she did) wholly apart from the messages. At a minimum, there is a reasonable likelihood that a jury would conclude that the terse, cryptic Facebook messages failed to establish proof beyond a reasonable doubt.

E. <u>Reversal Is Warranted.</u>

The error seriously affected the fairness, integrity, or public reputation of judicial proceedings. The government does not dispute this step of the analysis, likely because the impetus for this case was the death of Defendant's toddler, not the alleged small-time drug transaction months later. Indeed, the government originally charged Defendant only with manslaughter. It was only after the first trial ended in a mistrial that the government added the drug charge in a superseding indictment. The second jury convicted Defendant of manslaughter, and we unanimously affirm that conviction. But, as the government concedes, the drug conviction will carry collateral consequences for Defendant, including affecting her ability to receive certain government benefits. The error in the jury instructions, which allowed the jury to convict without finding that a drug offense even occurred, seriously affected the fairness, integrity, and public reputation of judicial proceedings.

Accordingly, I dissent from the opinion.